DAVID M. MEHNE, APPELLEE, V. DEANA HESS, APPELLANT.

553 N.W.2d 482

Filed September 3, 1996.   No. A-95-660.

Leo P. Dobrovolny, Jr., for appellant.

A. James Moravek, of Curtiss, Moravek & Curtiss, P.C., for appellee.

HANNON, SIEVERS, and MUES, Judges.

MUES, Judge.

## INTRODUCTION

Deana Hess appeals from a trial court's decision decreasing the child support obligation owed by David M. Mehne for the parties' twin boys. Hess asserts on appeal that a personal injury lump-sum settlement award received by Mehne should be considered income for the purpose of calculating child support.

## BACKGROUND

The parties' twin boys, Ethan and Evan, were born on June 30, 1990. A paternity action was filed, and pursuant to an agreement between the parties, temporary child support was set in October 1992 at $674. A settlement agreement, in which Mehne admitted paternity, was approved by the court by order dated March 11, 1993. This agreement further awarded custody of the minor children to Hess, subject to reasonable visitation,

and required Mehne to pay $500 in child support, with this amount subject to review and retroactive adjustment upon settlement of Mehne's pending lawsuit against Burlington Northern Railroad. The record fails to disclose how the $500 figure was arrived at. The agreement, and the order approving it, provided: "If Petitioner is awarded compensation for lost wages and future loss of earnings, the Court shall adjust the support due . . . ."

Mehne filed a "Showing" on November 17, 1994, acknowledging that he had received a settlement amount from Burlington Northern shortly after May 10, 1994. A hearing to determine child support was held on January 9, 1995. By a journal entry filed May 19, 1995, the court found a material change in circumstances and reduced Mehne's child support to $231 for two children and $148 for one child. In reaching these amounts, the court attributed $737 gross monthly income to Hess ($4.25 x 40 hours) and $775 gross monthly income to Mehne. The income figure attributed to Mehne was reached by applying a 4.43–percent interest rate to $209,820 of his settlement. No portion of the settlement's principal amount was treated as income.

## EVIDENCE ADDUCED AT TRIAL

In March 1991, Mehne injured his back while working as a brakeman and conductor for Burlington Northern. Because of his injury, Mehne was unable to return to that position. In May 1994, as the result of a claim under the Federal Employer's Liability Act, Mehne negotiated a gross settlement award of $375,000. In addition to this amount, all of Mehne's medical expenses were paid. Mehne testified that he did not expect further surgeries resulting from his injury. Burlington Northern deducted from the gross settlement amount slightly over $36,000 for loans to Mehne following his injury, making Mehne's check from Burlington Northern approximately $339,000. Further deductions for attorney fees, legal expenses, and a $25,000 "sustenance loan" were also made. It is unclear from the record whether the net settlement amount received by Mehne was $209,401 or $209,820. From the net amount received, Mehne paid off additional unspecified bills, leaving

$189,401.79. Mehne then purchased a house for $82,000 and a used truck for $10,000. At the time of the hearing in January 1995, Mehne had remaining from the settlement proceeds $3,000 to $4,000 in a checking account and approximately $65,000 in various interest–bearing funds and deposits.

Mehne is currently a full–time student, having started a 4–year course of study in the fall of 1994. He expects to graduate in May 1998 with a bachelor of science degree in nursing. Mehne estimated that he would be able to earn between $30,000 and $40,000 with this degree. Mehne is currently unemployed. He stated that it would be difficult for him to find a job at the current time due to his back injury, but that he would be "very employable" with a nursing degree. At the time of trial, Mehne testified that he had no other form of income and that he relied upon the remaining settlement proceeds to pay living expenses. Mehne is currently married and resides with his wife and her two children from a previous relationship.

Hess currently lives in Denver, Colorado, with her "common law" husband, their newborn child, and her twin sons. Hess is also currently unemployed due to her recent pregnancy and a preexisting back injury aggravated by her pregnancy. Hess testified that she had had four back surgeries in the past and might require a fifth.

Hess is a licensed practical nurse. Prior to moving to Denver, she was employed for approximately 6 months as a nurse, earning $7 an hour. Since moving to Denver, Hess has been employed at several nursing agencies. At her last position, she earned approximately $14.50 an hour, averaging 30 hours a week. At the time of trial, Hess had been unemployed for 11 months. Hess plans to go back to school to get her registered nurse's degree, which she estimated would take less than 6 months. Due to her back injury and newborn child, Hess estimated she would be able to return to school within another year or so. Hess estimated her monthly expenses to be approximately $1,000 a month.

## ASSIGNMENT OF ERROR

In sum, Hess' sole assignment of error is that the trial court erred in considering as income for child support purposes only

the interest produced by Mehne's lump-sum settlement, rather than the entire amount.

## STANDARD OF REVIEW

■ The trial court's award of child support after a determination of paternity will not be disturbed on appeal absent an abuse of discretion. *State v. Smith*, 231 Neb. 740, 437 N.W.2d 803 (1989); *Hanson v. Rockwell*, 206 Neb. 299, 292 N.W.2d 786 (1980).

## ANALYSIS

This case presents the issue of whether and how a personal injury settlement award should be considered for purposes of calculating child support. The trial court found that only the income generated by applying a hypothetical interest factor to a "net" settlement amount should be considered.

*Should Net Settlement Amounts Be Considered?*

■ Paragraph D of the Nebraska Child Support Guidelines defines total monthly income as the "income of both parties derived from all sources, except all means-tested public assistance benefits and payments received for children of prior marriages." Although not in effect at the time of this hearing, Paragraph D was amended effective January 1, 1996, to provide, in addition to that stated above: "If applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources." This amendment formalizes existing legislative direction and prevailing court decisions that earning capacity as well as the guidelines shall be considered in determining child support. See, Neb. Rev. Stat. § 42-364(6) (Cum. Supp. 1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). Both versions of the guidelines define "income" broadly, specifying only what is to be excluded from total income, rather than what is to be included. With certain exceptions, income includes "income . . . derived from *all* sources." (Emphasis supplied.)

Other jurisdictions, interpreting similar definitions of income, have included settlement proceeds in a parent's income figures. In *In re Marriage of Fain*, 794 P.2d 1086 (Colo. App. 1990), the court determined that payments received pursuant to a structured settlement of a personal injury claim constituted gross income when determining the parent's child support obligation. The *In re Marriage of Fain* court reasoned:

> Section 14–10–115(7)(a)(I)(A), C.R.S. (1987 Repl.Vol. 6B) provides that "gross income" includes "income from any source and includes, but is not limited to . . ." the items specifically enumerated therein. Therefore, although social security benefits and disability benefits are expressly included as "gross income," § 14–10–115(7)(a)(I), by its plain language, also includes all payments from a financial resource, whatever the source thereof. . . .

> While the General Assembly expressly excluded certain benefits from the definition of "gross income," . . . the statute does not provide an exclusion for personal injury benefits.

794 P.2d at 1087. Thus, in *In re Marriage of Fain*, the parent's personal injury payments were deemed a financial resource constituting "gross income" under Colorado child support guidelines.

A similar result was reached by the Superior Court of New Jersey in *Cleveland v. Cleveland*, 249 N.J. Super. 96, 592 A.2d 20 (1991). That court included the proceeds from a parent's personal injury settlement as income on the basis that absent a statement to the contrary, the legislature's clear intent was to base child support upon total family resources.

The Minnesota Court of Appeals, applying a similar analysis, reached a similar result. "Income" for the purpose of establishing child support is defined in Minnesota as " 'any form of periodic payment to an individual including, but not limited to, wages, salaries, payments to an independent contractor, workers' compensation, unemployment compensation, annuity, military and naval retirement, pension and disability payments.' " *Sherburne County Social Serv. v. Riedle*, 481 N.W.2d 111, 112 (Minn. App. 1992). In *Riedle*, a father, suing

a third party for sexual abuse that occurred when he was a child, accepted a settlement to be paid through an annuity over a period of years. The settlement provided for monthly payments, as well as lump–sum payments every 3 years. Referring to the aforementioned definition of "income," the court in *Riedle* stated: "This definition of income is broad and explicitly includes payments from an annuity. In the absence of any legislative intent to limit the definition, this court must conclude the legislature intended to include any periodic payments from an annuity, regardless of the annuity's source." *Id.* Thus, in *Riedle*, both the monthly and lump–sum payments were considered income for the purpose of child support. The court further stated: "This holding is consistent with the trial court's responsibility to consider the standard of living the child would have enjoyed had his parents been married." (Citation omitted.) *Id.*

The Minnesota Court of Appeals repeated this holding in *Mower County Human Services v. Hueman*, 543 N.W.2d 682 (Minn. App. 1996), in which it found two annuity contracts received by a father in conjunction with a settlement resulting from a personal injury he received when he was a child constituted income for the purpose of establishing child support.

Mehne, however, argues that since Nebraska has viewed personal injury settlements as *property* in dissolution cases, *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985), and *John v. John*, 1 Neb. App. 947, 511 N.W.2d 544 (1993), it is improper to view them as *income* in child support cases. Thus, he asserts that only the interest derived from his personal injury settlement is properly considered as income. A similar argument was raised and rejected in *In re Marriage of Fain*, 794 P.2d 1086 (Colo. App. 1990). In that case, the father argued that his personal injury settlement award constituted property and, therefore, was not income for child support purposes. Like Mehne, the father in *In re Marriage of Fain* cited dissolution cases in support of this contention. The *In re Marriage of Fain* court rejected this argument, noting simply that unlike dissolution cases in which the issue is whether a settlement constitutes marital property for property division purposes, the issue in child support cases is whether settlement proceeds are

a financial resource that may be considered in setting child support. We agree with the rationale of the *In re Marriage of Fain* court. The paramount concern and question in determining child support is the best interests of the children. *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). Moreover, while Mehne now contends the settlement is property and not income, his stipulation below belies such position. As stated above, in the March 11, 1993, order, Mehne stipulated that his child support obligation would be "subject to review and retroactive adjustment" if he was awarded compensation for "lost wages and future loss of earnings" as a result of his claim against Burlington Northern. To argue now that only interest income produced from such compensation should be considered is contrary to that stipulation.

Contrary to Mehne's argument, child support is also different from spousal support. Accordingly, Mehne's reliance upon *Ainslie v. Ainslie, ante* p. 70, 538 N.W.2d 175 (1995), *aff'd* 249 Neb. 656, 545 N.W.2d 90 (1996), is misplaced. In that case, treating an inheritance of one spouse as her separate property, we considered only the income derived therefrom when awarding alimony. Again, the issue in *Ainslie* involved the obligations between spouses, not the obligation of support owed by a parent to his or her child. See, also, *Cleveland v. Cleveland*, 249 N.J. Super. 96, 592 A.2d 20 (1991).

Mehne also contends that Nebraska has already determined that only interest income derived from personal injury settlements should be considered when awarding child support, citing *Maricle, supra*, and *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985). We disagree. The relevant issue addressed in those two cases was whether a totally disabled parent had an earning capacity for child support purposes. We do not read either case to stand for the proposition that *only* the interest income from settlement awards may be considered for child support purposes. Indeed, we believe *Lainson* compels consideration of the settlement proceeds in this case in determining child support. In *Lainson*, the father was a totally disabled quadriplegic who was incapable of earning a wage. Nevertheless, he received Social Security benefits and significant investment income from capital assets of over

$200,000, primarily stocks and bonds. He had received an undisclosed sum of money because of the injuries which resulted in his condition. The *Lainson* court found the father to have an earning capacity within the meaning of § 42–364(3) (Reissue 1984), which contained language similar to present day § 42–364(6) (Cum. Supp. 1994). In so concluding, the Supreme Court found:

> It has been the law of this state for many years that, as stated in *Brus v. Brus*, 203 Neb. 161, 164–65, 277 N.W.2d 683, 686 (1979), "[i]n determining the amount of child support to be awarded, the status, character, and situation of the parties and attendant circumstances must be considered. The financial position of the husband as well as the estimated costs of support of the children must be taken into account . . . ." . . . "Earning capacity" as used in § 42–364(3) means the overall capability of a parent to make child support payments based on the overall situation of the parent making such payments. That overall situation includes moneys available to the parent from all sources, including investment income.

*Lainson*, 219 Neb. at 174–75, 362 N.W.2d at 56.

Finally, we are not persuaded by Mehne's argument that personal injury settlements should be ignored as an income source in determining child support because they are not considered as gross income by Internal Revenue Service laws. The taxability of moneys received provides no logical basis to necessarily include or exclude them from the category of resources available to pay child support. Such a general proposition would exclude such settlements, when in fact many represent compensation for lost wages or diminished earning capacity, which are pivotal considerations in setting child support under Nebraska law. See, § 42–364(6); *Sabatka, supra*.

Based on the clear language of § 42–364(6), the broad definition of "income" in the guidelines, the *Lainson* holdings, and the cited decisions of other states, we conclude the district court abused its discretion in considering only interest income available from Mehne's settlement proceeds in determining Mehne's child support obligation. Having so found, we must make a de novo determination of what portion of Mehne's

personal injury settlement should be considered and how it should be factored in. Such a determination, by necessity, must depend upon the facts of each case, including what the settlement was intended as compensation for.

*What Portion of Settlement Proceeds Should Be Excluded?*

No attempt was made by either party to allocate the gross settlement proceeds to any specific element or item of damage. We realize that particularly in a general personal injury settlement context, such allocation is difficult, if not impossible, and subject to some abuse by those who attempt to make an allocation to meet the exigencies of the issues in dispute. Allocation becomes most important when there is a genuine dispute over whether a portion of the proceeds should be excluded because, inter alia, they are (1) compensation for the recipient's medical care and related expenses, *Gallegos v. Gallegos*, 174 Ariz. 18, 846 P.2d 831 (Ariz. App. 1992), and *In re Marriage of Durbin*, 251 Mont. 51, 823 P.2d 243 (1991) (portion of settlement compensating for medical and related expenses not includable), and (2) attributable to damages that are "capital" in nature, like pain, suffering, and disability, *Whitaker v. Colbert*, 18 Va. App. 202, 442 S.E.2d 429 (1994) (holding that portion of settlement intending to compensate for damages "capital" in nature should be excluded). Contra, *Cleveland v. Cleveland*, 249 N.J. Super. 96, 592 A.2d 20 (1991) (rejecting father's argument that only portion of personal injury settlement intended to compensate for lost wages should be used in calculating child support); *Mower County Human Services v. Hueman*, 543 N.W.2d 682 (Minn. App. 1996).

Of course, Mehne does not argue for any such partial exclusion, but, rather, insists that *none* of the proceeds should be included. Moreover, the evidence shows that none of the settlement was for past medical costs and that it is reasonably certain that significant medical expenses will not occur in the future from the injury. Based on the economist's report which was used in settlement negotiations, Mehne's lost wages and future wage loss alone from the disabling back injury were projected at approximately $716,000. The report was a pivotal tool in his attorney's April 4, 1994, $625,000 settlement

demand. The $375,000 settlement was consummated on April 29, 1994. We believe a fair inference is that the settlement, in large measure, was intended to compensate Mehne for the significant lost wages and future wage loss which he sustained.

We do not suggest that the settlement served no other purpose. To be sure, two back surgeries culminating in a fusion of vertebrae at the L5–S1 level involved pain, suffering, and significant permanent bodily impairment and overall disability. Such damages are, by nature, incapable of precise definition, but nonetheless very real. While it may be reasonable to assume that some undefined portion of the settlement was attributable to such factors, without any guidance evidentially in that regard, what portion was is purely speculative. What is certain from the evidence is that Mehne's lost wages and future earnings were significant in triggering the settlement. When a settlement is intended to replace income which would have been earned absent injury, it is generally treated as income for child support purposes. See *In re Marriage of Swan*, 526 N.W.2d 320 (Iowa 1995) (father's workers' compensation lump–sum settlement treated as income for child support purposes based on reasoning that it was intended to replace income he could have earned absent the injury).

Hess contends that the entire net settlement amount received by Mehne should be considered in the child support equation. Given the conflict in the evidence, we conclude that this amount is $209,401. Using this amount not only allows Mehne a deduction for the fees and expenses in generating the settlement, but also includes a deduction for approximately $61,000 to repay moneys loaned to Mehne following his injury. Although Mehne has only approximately $69,000 remaining from his settlement, he purchased a house and a vehicle out of the proceeds, and also paid off other significant debts. As a result, a reasonable inference is that he is not now shouldering mortgage, auto loan, or general debt–servicing burdens. We therefore conclude that under the circumstances here, the figure of $209,400 is an equitable sum to factor into our de novo determination of Mehne's child support obligation. We note, however, that there are several other ways, figures, and methods which may be used to reach a fair result in such cases. The facts

and circumstances of each case necessarily dictate the outcome where such settlements are to be considered in determining child support.

*How to Consider Proceeds.*

We move, finally, to the question of *how* to factor the settlement proceeds into the determination of Mehne's child support calculation. Again, as Mehne is insistent that none of it should be considered, he provides no solution in this regard. Hess argues that the entire net amount should be allocated over a period of 4 years to correspond with Mehne's completion of schooling before returning to the work force. According to Hess, using the child support guidelines, such allocation results in Mehne's monthly support obligation of $811 for the twins.

Our research discloses that other courts facing this issue have used a variety of methods to calculate support when faced with a lump-sum settlement amount determined to be includable in the recipient's income for child support purposes. Some view the lump-sum settlement amount as income only in the year in which it was received. See *In re Marriage of Sullivan*, 258 Mont. 531, 853 P.2d 1194 (1993). One court reversed a lower court's decision to treat a mother's receipt of a lump-sum workers' compensation payment as income only in the year in which it was received. See *Lenz v. Wergin*, 408 N.W.2d 873 (Minn. App. 1987). On appeal, the *Lenz* court allocated the lump-sum payment over the years between the date of the injury and the time the mother's obligation to support her child ceased. Still another court allocated a father's lump-sum payment over 126 weeks, the time period for which the payment was intended to compensate. *In re Marriage of Swan, supra.* In *In re Marriage of Swan*, the father's workers' compensation disability benefits were periodic and were scheduled to cease in the same month that the father would be completing his schooling. We come away from our review of such cases in general agreement with the court in *In re Marriage of Swan* that it would be unwise to define one rule to be applied in all cases in which a settlement award is at issue in this context. The appropriate treatment of such awards depends upon the circumstances of each case, with the best

interests of the children as the paramount focus. *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994).

The facts of this case indicate that Mehne is currently unable to engage in work involving strenuous physical labor, the type of work which has represented his livelihood for the 15–year period prior to his injury. He is currently a full–time student, and his current source of income is what remains from his settlement award, some $69,000. He plans to graduate in May 1998 after completing a 4–year program to attain his bachelor of science degree in nursing. He estimates his earning capacity will be between $30,000 and $40,000 gross per annum after graduation. We realize that much of the remaining proceeds may be necessary for basic living expenses of Mehne's current household during his schooling, absent his obtaining part–time employment to supplement these amounts. At the same time, we cannot ignore that a substantial portion of his settlement proceeds were used to purchase assets and pay debts, which has reduced his necessary monthly living expenses and thus benefits his overall financial condition and standard of living, a standard which would have been shared with his twins if they lived in his household.

In our de novo review, we conclude that the settlement proceeds of $209,400 should be allocated over the period of time from Mehne's receiving it (May 1994) until the twins reach age 19 (2009), or for 15 years. By using this method, the children benefit from an increase in support from Mehne over the entire time they are entitled to receive it and Mehne is not attributed income which results in a child support obligation totaling nearly $40,000 over a 4–year period—the amount of the award were we to accept Hess' position. In reaching this decision, we are aware that a reasonable inference is that the settlement proceeds were intended to compensate Mehne for his entire working life. However, spreading the settlement proceeds over a period of 34 years would lead to an untenable result in this case and would not be in the children's best interests.

By applying the above method, Mehne's current child support obligation must be calculated using a monthly net income figure of $1,163. The trial court attributed an earning capacity to Hess based upon a 40–hour week at $4.25 per hour

and used a net monthly income figure for her of $619. Neither party challenges this figure on appeal. Using that same amount in our de novo determination, Mehne owes $353 per month for child support for the two children and $227 for one child, commencing on June 1, 1995, and continuing thereafter as allowed by law or until further order of the court. No income tax deduction was calculated in determining Mehne's monthly income figure as, according to Mehne, no income tax is payable on the award. The $1,163 monthly income figure which we have attributed to Mehne must continue to be attributed to him, in addition to his actual earnings, in any future child support determinations.

## CONCLUSION

The district court was correct in modifying Mehne's child support obligation. However, the district court abused its discretion by considering Mehne's settlement proceeds only to the extent of the interest income which they could generate. Instead, under the circumstances of this case, portions of the settlement proceeds should have been considered in determining child support, either as income or as a factor affecting Mehne's overall financial condition and thus bearing on his earning capacity. We modify the district court's order by increasing Mehne's child support obligation effective June 1, 1995, for two children to the sum of $353 per month and $227 per month if only one child remains to be supported, subject to the directions in this opinion regarding any future child support determinations.

AFFIRMED AS MODIFIED.