JANET L. BECKER, APPELLANT,
V. BRUCE E. BECKER, APPELLEE.
573 N.W. 2d 485

Filed December 16, 1997.   No. A-97-279.

Claude E. Berreckman, Jr., and Kelly L. Sudbeck, of Berreckman & Berreckman, P.C., for appellant.

E. Bruce Smith for appellee.

SIEVERS, MUES, and INBODY, Judges.

SIEVERS, Judge.

## INTRODUCTION
This case presents the issue of whether a workers' compensation settlement award should be considered for purposes of calculating child support.

## BACKGROUND
Bruce E. Becker was married to Janet L. Becker on November 12, 1976, in Dawson County, Nebraska. During their

marriage, the couple had two children: Jamie Lynn, born February 27, 1978, and Mark Edward, born May 20, 1981. In September 1993, Bruce ruptured a lower spinal disk in the course and scope of his employment when he fell while moving a large board. Bruce filed a workers' compensation claim for injuries received as a result of this accident. On December 3, 1993, in accordance with the wishes of the parties, a decree of dissolution of marriage was entered in the district court for Dawson County, Nebraska. The decree gave custody of the couple's minor children to Janet, subject to Bruce's right of reasonable visitation. Neither party was required to pay alimony, but Bruce stipulated to child support payments of

"$50.00 payable December 1, 1993, to increase to $275.00 per month commencing January 1, 1994, payable in the same amount on the first day of each month thereafter. Support payable from and after January 1, 1994 is based upon net monthly income of Petitioner [Janet] of approximately $1,063.00, and upon Respondent's [Bruce] net monthly income of approximately $800.00."

On February 3, 1995, the district court for Dawson County determined that Bruce's obligation for child support should be increased to $378 per month for two children and $242 for one child. In September 1995, Bruce suffered a recurrence of his back injury. As a result, on October 13, he filed a motion for a temporary modification of decree due to physical hardship, which stated:

A Material Change has taken place in the Health of the Respondent, Bruce Becker. A reacurrance [sic] of a medical condition (ruptured lower spinal disk) from a previous injury in September of 1993, has caused Respondent to be unable to work. Thus having no income to pay Court Ordered Support for the Respondents 2 minor children.

Respondent has been unable to work since September 15th, 1995 and has been under the care of an Orthopedic Specialist since September 19th 1995. . . . Respondent has been advised by his Doctor to not return to his type of employment (carpentry) until approximately December, 5th, 1995. . . .

. . . .

WHEREFOR RESPONDENT PRAYS TO THE COURT THAT:

That the Respondent, Bruce Becker, be Temporarily . . . relieved of the Financial Burden of, Child Support, Medical Insurance Premiums of minor children, Payments of 1/2 of uncovered Medical Expenses. Until such time Respondent is Medically capable of returning to fulltime Gainfull [sic] employment.

In a journal entry filed November 6, 1995, the district court reduced Bruce's child support payment to $50 per month per child for a total of $100 per month retroactive to September 15, 1995.

Bruce was released by his doctor to return to regular work as of January 25, 1996, subject to a lifting restriction of 50 pounds using proper body mechanics. On February 28, Janet filed an application for modification of decree, seeking to reinstate Bruce's prior child support obligation. In a journal entry filed March 21, the district court held that "child support payable by Respondent be reinstated effective March 1, 1996, in the same amount as was previously in effect, that being $378.00 per month for the two minor children of the parties. . . ." The temporary child support reduction in the amount of $278 per month from September 15, 1995, to March 1, 1996, a period of 5½ months, totaled $1,529.

In response to a second application by Janet to modify the divorce decree, the district court ruled on April 29, 1996: "The Court is further advised that, based on net monthly incomes of $1,283.00 for the Petitioner and $1,789.00 for the Respondent, the child support obligation of the Respondent shall be increased to $600.00 per month for the two minor children of the parties, effective April 1, 1996 . . . ." In response to a third application by Janet to modify the decree, the district court held, by journal entry filed November 20, 1996, that Bruce pay $416 per month for the two minor children, based on a net monthly income of $1,280 for Janet and $1,218 for Bruce.

On November 13, 1996, Bruce received a lump-sum settlement of $35,000 from his workers' compensation claim. Exhibit B, attached to Bruce's application for approval of final lump-sum settlement, indicates that the settlement consisted of

$5,943.57 for temporary total disability for the period from September 5, 1995, through February 9, 1996; $10,436.27 for permanent partial disability based on a 10-percent disability and the resulting reduction in Bruce's earning capacity; and $18,620.16 of "additional consideration."

Janet filed a fourth application for modification of decree on December 13, 1996. The fourth application is the subject of this appeal. This request for modification alleged, in pertinent part:

> The Respondent has recently received the proceeds of a $35,000.00 Workers' Compensation Lump Sum Settlement. . . .
>
> . . . The proceeds of the lump sum settlement . . . constitute income under Section D of the Nebraska Child Support Guidelines and the amount received constitutes a material change in circumstances justifying modification of the Decree to increase the child support obligation of Respondent.

Janet requested a prospective increase in child support and reimbursement for the reduction in child support received by Bruce for the months he did not work.

Bruce alleged in an affidavit offered at the hearing on the application for modification that after attorney fees, costs, and "basic furniture" was purchased, he had $13,000 remaining from the $35,000 settlement and continued to "have bothersome back problems, and anticipates that further surgery will be required." In a journal entry filed February 6, 1997, the district court denied Janet's application to further increase child support based on the lump-sum settlement. Janet moved for a new trial, and after this motion was denied, she appealed.

## ASSIGNMENTS OF ERROR

Janet argues that the trial court erred (1) in finding that the workers' compensation lump-sum settlement did not constitute a material change in circumstances pursuant to the Nebraska Child Support Guidelines, (2) in finding that the settlement did not constitute income pursuant to the Nebraska Child Support Guidelines, and (3) in denying her application for modification.

## STANDARD OF REVIEW

Modification of the amount of child support payments is entrusted to the discretion of the trial court, and although, on

appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Marr v. Marr*, 245 Neb. 655, 515 N.W.2d 118 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994).

## ANALYSIS
*Lump-Sum Settlement as Income for Child Support Purposes.*

A party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was entered. *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Sabatka v. Sabatka, supra.*

Janet asserts on appeal that the workers' compensation lump-sum settlement award received by Bruce should be considered income for the purpose of calculating child support. Paragraph D of the Nebraska Child Support Guidelines defines total monthly income as the "income of both parties derived from all sources, except all means-tested public assistance benefits and payments received for children of prior marriages." It further states: "If applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources." The guidelines, then, define "income" broadly, and with certain exceptions, income includes "income . . . derived from *all* sources." (Emphasis supplied.)

Guided by the above definition of income, this court, in *Mehne v. Hess*, 4 Neb. App. 935, 553 N.W.2d 482 (1996), included Federal Employers' Liability Act (FELA) settlement proceeds in a parent's income for calculation of child support. In *Mehne*, David Mehne received a $375,000 FELA settlement for injuries he received to his back while working for the

Burlington Northern Railroad. Prior to the settlement, Mehne had admitted that he was the father of Deana Hess' twin boys, Ethan and Evan. In a settlement agreement of the paternity matter, Hess was awarded custody of the minor children and Mehne was required to pay $500 in child support, with this amount subject to review and retroactive adjustment upon settlement of Mehne's pending lawsuit against Burlington Northern.

After Mehne filed a showing acknowledging that he had received a settlement from Burlington Northern, a hearing was held to determine child support. The trial court reduced Mehne's child support and failed to treat any of the settlement as income. On appeal, we modified that decision, holding that because the settlement, "in large measure, was intended to compensate Mehne for the significant lost wages and future wage loss," it was income under the Nebraska Child Support Guidelines. *Id.* at 944, 553 N.W.2d at 487. As support for this holding, we agreed with the rationale of the Colorado Court of Appeals in *In re Marriage of Fain*, 794 P.2d 1086 (Colo. App. 1990), where the father argued that his personal injury settlement award constituted property rather than income for child support purposes. The Colorado court noted that the issue in child support cases is whether settlement proceeds are a financial resource that may be considered in setting child support. The Colorado Court of Appeals determined that payments received pursuant to a structured settlement of a personal injury claim constitute gross income when determining the parent's child support obligation. In *Mehne*, we also noted the Supreme Court of Iowa's decision, *In re Marriage of Swan*, 526 N.W.2d 320 (Iowa 1995), where the father's workers' compensation lump-sum settlement was treated as income for child support purposes, because it was intended to replace income he could have earned absent his injury.

Based on the broad definition of "income" in the guidelines, the *Mehne* decision, and the cited decisions of other states, we conclude that the district court abused its discretion by failing to consider any of Bruce's settlement proceeds as income under the guidelines. Having so found, we must make a de novo determination of what portion of Bruce's workers' compensation settlement should be considered and how it should be factored into

the child support calculations. This determination, of necessity, depends upon the facts of each case, including what was intended to be compensated for by the settlement. See *Mehne, supra.*

*How to Consider Proceeds.*

We move now to the question of how to factor the settlement proceeds into the determination of Bruce's child support obligation. Janet first contends that she is owed retroactive child support in the amount of $1,529, because of the reduction of Bruce's previous obligation of $378 per month for two children to $100 per month for two children due to temporary hardship when he was temporarily totally disabled by his injury and unable to work. The general rule in Nebraska is to allow modification of a child support order to operate prospectively from the time of the modification order. *Dean v. Dean*, 4 Neb. App. 914, 552 N.W.2d 310 (1996). But, in certain circumstances, a modification can be made retroactive to when the application to modify was filed. *Id.* In *Dean*, we held that a court is without authority to issue an order modifying child support retroactive to a date prior to the date of the filing of the application. See *Hoover v. Hoover*, 2 Neb. App. 239, 508 N.W.2d 316 (1993). Janet filed her application to modify on December 13, 1996, and asks that she be awarded child support for a period commencing on October 15, 1995, and ending March 1, 1996. Under *Dean*, we cannot impose a child support obligation retroactive to a date prior to the filing of the application to modify. To do so would, in effect, be a judgment against Bruce, payable immediately for $1,529.

We digress briefly, because we note that the district court's order of November 6, 1995, which reduced Bruce's child support obligation from $378 to $100 was made retroactive to September 15, 1995, despite Bruce's application being filed October 13, 1995. Thus, the district court in effect "forgave" $278 of child support which had accrued and vested prior to Bruce's filing his application to modify. This cannot be done. See *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991) (holding that courts are generally without authority to reduce accrued payments). However, it is important to note here, and

for our final resolution of this issue, that although a court may not forgive or modify past-due child support and cannot order modification retroactive before the filing of the application to modify, the court may modify child support coming due in the future. *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991). Although not explicitly stated in *Berg*, we believe that a future modification must take into account the equities of the situation. Here, that would include consideration of the forgiveness of child support which had already accrued.

■ The paramount concern and question in determining child support is the best interests of the children. *Mehne v. Hess*, 4 Neb. App. 935, 553 N.W.2d 482 (1996). Obviously, Bruce's children were affected by their father's injury, because their level of support was reduced while he was totally disabled. Bruce's application to modify requested only a *temporary* reduction in his support obligation. Via the settlement, Bruce has now been compensated, at least in large part, for the work he missed while temporarily totally disabled. These facts, coupled with the court's forgiveness of $278 of accrued child support, cause us to conclude that under *Berg* an equitable adjustment prospectively to account for the loss of $1,529 in child support should have been made by the district court. There are 42 months left for Bruce to pay child support from the time of Janet's application on December 13, 1996, until the youngest child reaches age 19. Thus, we find that his monthly child support obligation should be increased by $36.40 ($1,529 ÷ 42 months). However, we must deal with the settlement proceeds in order to determine the sum to which the $36.40 each month will be added.

In an affidavit by Bruce which Janet offered to prove that Bruce received a lump-sum workers' compensation settlement, Bruce stated:

Of the total settlement award of $35,000.00, the following expenses have been made:

| $35,000.00 | Award |
| - 8,000.00 | Attorneys' fees |
| - 622.25 | Misc. Costs |
| $26,377.75 | Balance to Affiant |

. . . From the above settlement, debts accumulated during Affiant's disability were paid, basic furniture was purchased, and the sum of $13,000.00 remains in savings, against expenses anticipated in the future. Affiant continues to have bothersome back problems, and anticipates that further surgery will be required. The last surgery experienced by Affiant cost over $16,000.00, and the amount of attained [sic] savings is considered to be inadequate for such surgical expense, if and whenever required.

Included on exhibit B, attached to Bruce's application for approval of final lump-sum settlement made to the Workers' Compensation Court, is a breakdown of the benefits payable to Bruce via the lump-sum settlement. This exhibit sets forth:

| | |
|---|---|
| To plaintiff for temporary total disability from 9/5/95 to 2/9/96, inclusive, 22 3/7 weeks at a rate of $265.00 per week | $ 5,943.57 |
| To plaintiff for a 10 percent partial disability of the body as a whole (10% x $634.14 x 66 2/3) = $42.28 per week | |
| a) Accrued from 7/15/96 to 10/31/96, 15 4/7 weeks | $ 616.08 |
| b) Commuted for the balance of (300 - 22 3/7 - 15 4/7) 262 weeks, the present value of which is 232. 2655 | $ 9,820.19 |
| Additional Consideration | $18,620.16 |

█ In *Mehne*, this court determined an equitable sum to factor into our de novo review of Mehne's child support obligation. There, we found that $209,400 out of a gross settlement of $375,000 was an equitable sum. We observed that the settlement was in large measure designed to compensate Mehne for future wage loss. The figure of $209,400 allowed deduction for attorney fees and expenses and repaying loans incurred while his case was pending, but we did not wholeheartedly embrace the fact that Mehne had spent the settlement down to only $69,000. Mehne had bought a house and a vehicle, and paid

other debts; and we observed that doing so should reduce his monthly outlay of cash for living expenses, freeing up money for child support. Here, the settlement is considerably smaller and only $13,000 cash was left at the time of the hearing. But Bruce's children should have the benefit of what he earns in wages, plus some recognition that he has achieved a settlement which compensates him, to the extent allowed by the Nebraska Workers' Compensation Act, for a loss of earning capacity. The fact Bruce may have already spent part of the money is not an overriding consideration in this calculus of support. Earning capacity is a critical measure of the obligation to pay child support. See *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). Here, part of Bruce's earning capacity has been replaced by a lump-sum settlement, and we find that the district court abused its discretion in essentially ignoring that reality of this situation. But *Mehne* makes it clear that the determination of what to include from work-injury settlements and how to calculate its inclusion in the child support calculus is a case-by-case matter.

In our de novo review, we conclude that settlement proceeds of $22,820.19 ($13,000 of remaining cash plus the $9,820.19 of the settlement attributed to permanent disability) should be considered in setting child support from December 13, 1996 (the date when Janet filed her most recent application), until the youngest child reaches age 19.

As of the hearing on the application to modify at issue held January 17, 1997, Bruce's monthly net income from wages was $1,218 and Janet's was $1,280. Prior to the application to modify of December 13, 1996, Bruce's child support obligation was $416 per month for two children and $289 per month for one child. The district court had not revealed its method of setting this amount, nor did it explain its rationale for not using the settlement proceeds when ruling on Janet's fourth application to increase child support above $416 per month. It has been previously suggested that when using the Nebraska Child Support Guidelines, it would be extremely helpful to the reviewing court if the trial judge somehow would incorporate into the record his or her worksheet which was employed in arriving at a child support amount. *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104

(1994). Paragraph C of the Nebraska Child Support Guidelines now requires that "[a]ll orders for child support, including modifications, *must* include a basic income and support calculation worksheet 1, and if used, worksheet 2 or 3."

Returning to the calculation, we see that as a result of the settlement, Bruce was awarded $42.28 per week for a 10-percent partial disability of the body as a whole. Thus, because of his settlement, Bruce has additional monthly income of $183 ($42.28 × 52 weeks ÷ 12 months). We therefore consider Bruce's earnings to be increased by $183 per month. We also consider the $13,000 Bruce has in savings, to the extent that said sum should generate income by interest. We use the interest on judgments at the time of trial of 6.61 percent, see Neb. Rev. Stat. § 45-103 (1993). Therefore, Bruce has additional monthly income of $71.61 ($13,000 × 6.61 percent ÷ 12). Therefore, according to the above calculations, Bruce has a present monthly income of $1,472.61 ($1,218 + $183 + $71.61). Using the Nebraska Child Support Guidelines, we find that Bruce and Janet have a combined monthly income of $2,752.61 ($1,472.61 + $1,280), of which 54 percent is attributable to Bruce. The guidelines provide for a child support amount at that income level of $935.80 for two children and $651.55 for one child or $505.33 in support payable by Bruce for two children and $351.83 for one child. Adding in the additional $36.40 per month to make up for the temporary reduction of his child support to each figure, as we earlier discussed, we hold that Bruce should pay $541.73 per month for child support for two children and $388.23 for one child as a result of the lump-sum settlement award, effective January 1, 1997, the first month after Janet filed her application to modify.

## CONCLUSION

The district court abused its discretion by refusing to consider Bruce's lump-sum settlement from his work injury as part of the income calculation for child support purposes. Moreover, equity requires that the reduction in child support which Janet endured while Bruce was unable to work now be addressed. Thus, we reverse the district court's decision denying Janet an increase in child support and increase Bruce's obligation effec-

tive January 1, 1997, from $416 per month to $541.73 per month for two children and from $289 to $388.23 per month for one child.

REVERSED.