Filed 5/11/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 87

Greta J. Dupay f/k/a Greta J. 

Bertsch, n/k/a Greta J. Powell, Plaintiff and Appellee

v.

Matthew A. Dupay, Defendant and Appellant

No. 20090266

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Aaron Curtis Vibeto, 1602 4th Avenue Northwest, Suite B, Minot, N.D. 58703, for plaintiff and appellee.

Katy Marie Schaefer, P.O. Box 998, Minot, N.D. 58702-0998, for defendant and appellant.

Dupay v. Dupay

No. 20090266

Sandstrom, Justice.

[¶1] Matthew A. Dupay appeals from an amended judgment denying in major part his motion to modify his child support obligation.  We conclude the district court did not err in refusing to relieve Dupay of his obligation to pay child support to Greta J. Dupay, now known as Greta J. Powell (“Powell”), based on proceeds he received from a personal injury settlement in 2002.  We affirm.

I

[¶2] Dupay and Powell were divorced in June 2002.  Powell was granted primary custody
(footnote: 1) for the couple’s child, and Dupay was ordered to pay $298 per month in child support.  In April 2005, Powell moved to increase Dupay’s child support obligation on the basis of his “substantial increase in income.”  Powell alleged that she was aware Dupay “had received a very large personal injury settlement” shortly after the parties were divorced in 2002.  Relying on 
Otterson v. Otterson
, 1997 ND 232, ¶¶ 17-18, 571 N.W.2d 648, the district court concluded Dupay’s net personal injury settlement could be included in his income for child support purposes, but explained:

The problem this Court has with factoring [Dupay’s] personal injury award into the child support calculation in this case is that the information concerning this award is rather sketchy.  The Court was not told whether this was a 
lump sum
 award or in the form of a 
structured settlement
.  The Court also was not informed as to the 
net
 amount of the award, and there was no indication what portion of the award was designed to 
replace lost earnings
.

 

Under these circumstances, the Court is persuaded that the proper course of action is to give [Powell] two (2) options: 1. [Powell] can agree to accept $362.00 per month in child support from [Dupay], without factoring the personal injury award into the calculation  (
NOTE
: She at one point indicated that this would be acceptable to her).  
OR
 2. [Powell] can request that [Dupay] be required to supplement the record with the information necessary to enable the Court to factor the net amount of the personal injury award into the child support calculation.

 

[¶3] Powell chose the second option, and a hearing was held to receive evidence about the nature of the personal injury settlement award “and whether the award designated a breakdown of what the award was to cover (medical expenses, pain and suffering, lost past and future wages, etc.).”  The record reflects the gross amount of the settlement was $600,000, and Dupay received a lump sum payment of $250,275.98 after deductions were made for a workers compensation lien and attorney fees and costs.  The district court divided the $250,276 net personal injury settlement amount by 133, the number of months remaining in the child’s minority, and found the $1,882 result “equals the 
amount of settlement money deemed to be available to [Dupay] on a monthly basis for the balance of [the child’s] minority
.”  The court added $1,882 to Dupay’s current monthly income and arrived at a guidelines monthly child support obligation of $588 beginning May 1, 2005.  Dupay did not appeal the court’s decision.

[¶4] In April 2009, Dupay moved to modify his child support obligation.  Dupay contended his child support obligation should be lowered to $282 per month because “he is not currently employed and the windfall of his personal injury settlement award previously taken into account in calculating his child support obligation has ceased.”  Dupay sought modification of his child support obligation “without taking into consideration my personal injury settlement award” because “I received the settlement in a lump sum in 2002; I am not receiving any settlement award now.”  Following a hearing on the motion, the district court reduced Dupay’s child support obligation by $64 per month to reflect Dupay’s involuntary layoff from his employment.  However, the court refused “to amend an earlier determination that the settlement would increase Dupay’s income by $1,882.00 per month for 133 months.”  The court reasoned:

At the hearing, DuPay testified that he used the settlement to purchase a home for approximately $100,000.00; which is now worth approximately $130,000.00.  DuPay stated that he 
invested $50,000.00 
of the settlement proceeds.  DuPay also testified that he had approximately $6,000.00 remaining in his investment account.  DuPay testified that he had withdrawn money from his investment account.  DuPay testified that he also used the settlement proceeds to make a down payment on a vehicle, remodel his home, pay off debts, and supplement lost income as a result of chronic illnesses.  DuPay was unable [to] account for a substantial portion of the settlement.  DuPay argues that the 133 month time period was unreasonable.  DuPay also argues that Powell must show that some benefit of the settlement remains.

 

. . . .

 

Judge McLees exercised discretion and calculated the value of the windfall.  The Court determined that the benefit from the windfall settlement would continue at a monthly rate of $1,882.00 for a period of 133 payments.  Although the time period of the windfall is longer than determined in previous North Dakota cases, the amount of the settlement received was also much larger.  DuPay did not appeal that determination.  The Court could have determined that the settlement would have benefitted DuPay for a shorter time period.  However, that would have likely substantially increased DuPay’s monthly support amount.

Based on his testimony at the hearing, DuPay continues to receive benefits from the personal injury settlement.  DuPay had the option of placing a portion of the settlement in savings to be used for future child support payments.  DuPay chose to make other investments.  As a result, the Court will not reduce DuPay’s payment obligation based on the prorated value of the settlement.

 

The court set Dupay’s child support obligation at $524 per month, and an amended judgment was entered to reflect the modification of child support.

[¶5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Dupay’s appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II

[¶6] Dupay challenges the district court’s refusal to relieve him of his obligation to pay child support based on the proceeds he received from the 2002 personal injury settlement.

[¶7] “Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.”  
Buchholz v. Buchholz
, 1999 ND 36, ¶ 11, 590 N.W.2d 215.  Under N.D.C.C. § 14-09-08.4(4), if a prior child support order was entered at least one year before the motion to modify, the district court must apply the child support guidelines and order support in the presumptively correct amount, unless the presumption is rebutted.  
See
 
Oien v. Oien
, 2005 ND 205, ¶ 7, 706 N.W.2d 81.  A party seeking amendment or modification under N.D.C.C. § 14-09-08.4 has the burden of proving the existing level of support does not conform to the guidelines.  
Oien
, at ¶ 8.  If the district court fails to comply with the child support guidelines in determining an obligor’s child support obligation, the court errs as a matter of law.  
Verhey v. McKenzie
, 2009 ND 35, ¶ 5, 763 N.W.2d 113.

[¶8] Powell argued that principles of res judicata bar Dupay from challenging the district court’s unappealed 2005 decision that the lump sum personal injury settlement would be “deemed” available to Dupay in the amount of $1,882 per month for 133 months.  We have noted that “[c]hild support orders are given only ‘limited finality,’” and therefore, “res judicata ordinarily will not prevent reexamination of a child support order.”  
Zarrett v. Zarrett
, 1998 ND 49, ¶ 8, 574 N.W.2d 855 (internal citation omitted).  Although the district court mentioned Powell’s res judicata argument in its decision, the court did not base its ruling on res judicata.  Rather, the court reaffirmed the earlier 2005 decision and ruled the $1,882 per month would continue to be considered income in calculating child support because “Dupay continues to receive benefits from the personal injury settlement.” 

[¶9] Under the child support guidelines’ broad definition of gross income in N.D. Admin. Code § 75-02-04.1-01(5), proceeds from a personal injury settlement must be considered in calculating the obligor’s income for child support purposes.  
See
 
Otterson
, 1997 ND 232, ¶¶ 16, 17, 20, 571 N.W.2d 648; 
see also
 
Berge v. Berge
, 2006 ND 46, ¶ 13, 710 N.W.2d 417.  Although this Court in 
Otterson
 did not address allocation of the proceeds of a lump sum personal injury settlement for child support purposes, other courts have addressed the question.  
See
 G. Rosten, Annot., 
Consideration of obligor’s personal-injury recovery or settlement in fixing alimony or child support
, 59 A.L.R.5th 489, 525-27 (1998).  As the court noted in 
In re State and Taylor
, 904 A.2d 619, 625 (N.H. 2006), “no court holds that trial courts may not prospectively allocate settlement proceeds to calculate monthly child support obligations.”  

[¶10] In 
Mehne v. Hess
, 553 N.W.2d 482 (Neb. Ct. App. 1996), the Nebraska Court of Appeals approved the method the district court used in this case to allocate the settlement proceeds over the child’s minority.  In 
Hess
, at 484, a child support obligor received a net personal injury settlement award of $209,401, and the trial court had found that only the income generated by applying a hypothetical interest rate factor to the net settlement amount should be considered for child support purposes.  The appeals court concluded that the trial court had abused its discretion in considering only the interest income available from the obligor’s settlement proceeds, because under the Nebraska Child Support Guidelines’ broad definition of total monthly income as “‘income . . . derived from all sources,’” the settlement proceeds should also have been included in determining the child support obligation.  
Id.
 at 484, 487.  The court made a de novo determination that $209,400 was the appropriate amount of the settlement to use in considering the child support obligation because “[n]o attempt was made by either party to allocate the gross settlement proceeds to any specific element or item of damage.”  
Id.
 at 487.  On the issue of how the settlement proceeds should be factored into the determination of the child support calculation, the obligor argued none of the proceeds should be considered, and the obligee argued the net amount should be allocated over a four-

year period to correspond with the obligor’s completion of schooling before returning to the work force.  
Id.
 at 488.  After discussing various methods used by courts to calculate child support when faced with a lump sum settlement amount, the court said:

[I]t would be unwise to define one rule to be applied in all cases in which a settlement award is at issue in this context.  The appropriate treatment of such awards depends upon the circumstances of each case, with the best interests of the children as the paramount focus.

 

The facts of this case indicate that [the obligor] is currently unable to engage in work involving strenuous physical labor, the type of work which has represented his livelihood for the 15-year period prior to his injury.  He is currently a full-time student, and his current source of income is what remains from his settlement award, some $69,000.  He plans to graduate in May 1998 after completing a 4-year program to attain his bachelor of science degree in nursing.  He estimates his earning capacity will be between $30,000 and $40,000 gross per annum after graduation.  We realize that much of the remaining proceeds may be necessary for basic living expenses of [the obligor’s] current household during his schooling, absent his obtaining part-time employment to supplement these amounts.  At the same time, we cannot ignore that a substantial portion of his settlement proceeds were used to purchase assets and pay debts, which has reduced his necessary monthly living expenses and thus benefits his overall financial condition and standard of living, a standard which would have been shared with his twins if they lived in his household.

 

In our de novo review, we conclude that the settlement proceeds of $209,400 should be allocated over the period of time from [the obligor’s] receiving it (May 1994) until the twins reach age 19 (2009), or for 15 years.  By using this method, the children benefit from an increase in support from [the obligor] over the entire time they are entitled to receive it and [the obligor] is not attributed income which results in a child support obligation totaling nearly $40,000 over a 4-

year period—the amount of the award were we to accept [the obligee’s] position.  In reaching this decision, we are aware that a reasonable inference is that the settlement proceeds were intended to compensate [the obligor] for his entire working life.  However, spreading the settlement proceeds over a period of 34 years would lead to an untenable result in this case and would not be in the children’s best interests.

 

Id.
 at 488-89 (citation omitted).  The court concluded the obligor’s child support obligation must be calculated using a monthly net income figure of $1,163, which “must continue to be attributed to him, in addition to his actual earnings, in any future child support determinations.”  
Id.
 at 489.

[¶11] Other methods of allocating Dupay’s lump sum personal injury settlement proceeds may have been permissible.  
See
 Annot., 59 A.L.R.5th 489, 525-27, and cases collected therein.  However, when a matter lies within the district court’s discretion, we will not reverse for an abuse of discretion unless the court acted in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law.  
State ex rel. K.B. v. Bauer
, 2009 ND 45, ¶ 8, 763 N.W.2d 462.  Dupay has not convinced us that the district court abused its discretion in allocating the settlement proceeds.

[¶12] This Court has said that in cases involving nonrecurrent income, a district court should order “a future reduction in support when the effect of the windfall ceases.”  
Helbling v. Helbling
, 541 N.W.2d 443, 447 (N.D. 1995); 
see also
 
Longtine v. Yeado
, 1997 ND 166, ¶ 8, 567 N.W.2d 819.  Dupay argues the district court erred in failing to address whether the effect of the “windfall” from the personal injury settlement has “ceased.”  However, although the district court in its 2005 ruling determined the “windfall” would “cease” after a period of 133 months, the court’s finding that “Dupay continues to receive benefits from the personal injury settlement” is also tantamount to a finding that the “windfall” from the personal injury settlement has not “ceased.”  Consequently, the issue before us is whether the court’s finding of fact is clearly erroneous.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made.  
Heinle v. Heinle
, 2010 ND 5, ¶ 21, 777 N.W.2d 590.  Dupay claims the record is “void of any evidence” to support the court’s finding.

[¶13] Dupay testified he used the settlement proceeds to pay off debts, purchase a house, finish the basement of the house, purchase furniture, and make a down payment on a vehicle.  He used the proceeds to open an investment account, which still contained funds at the time of the hearing.  He used some of the funds to supplement his income when he missed work because of illness.  He was unable to explain what happened to a substantial portion of the settlement proceeds.  Dupay’s argument that the “windfall” has “ceased” because he does not currently receive settlement proceeds ignores the realities of the situation.  Dupay cannot claim he would have been in a better position if the allocation period set by the court had been significantly shorter, because his child support obligation would likewise have been significantly higher and he would have been unable to use the settlement proceeds in the same manner.  As the court recognized in 
Hess
, 553 N.W.2d at 489, Dupay’s use of settlement proceeds to pay off debts, purchase a home and furnishings, and make investments “has reduced his necessary monthly living expenses and thus benefits his overall financial condition and standard of living, a standard which would have been shared with his [child] if [the child] lived in his household.”  Adopting Dupay’s argument that the “windfall” in this case has “ceased” because all of the liquid proceeds are no longer available to him would encourage obligors to simply spend settlement proceeds to lower their child support obligations.  We conclude the court’s finding that Dupay continues to receive benefits from the personal injury settlement and that the “windfall” has not “ceased” is not clearly erroneous.

[¶14] We conclude the district court did not err in setting Dupay’s child support obligation at $524 per month.

III

[¶15] Powell argues she should be awarded costs in the district court for defending Dupay’s motion to modify his child support obligation and costs associated with defending Dupay’s appeal.

[¶16] The district court ordered that “neither party shall be awarded attorney fees or court costs.”  However, Powell did not file a cross-appeal.  An appellee who fails to cross-appeal is precluded from seeking greater relief than she received in the district court.  
See
 
Stewart v. North Dakota Workers Comp. Bureau
, 1999 ND 174, ¶ 37, 599 N.W.2d 280.

[¶17] Because Powell does not claim Dupay’s appeal is frivolous under N.D.R.App.P. 38, we assume her request for costs on appeal is premised on N.D.C.C. § 14-05-23, under which costs and attorney fees may be awarded on the basis of the parties’ financial status and the need for and ability to pay.  
See
 
Doepke v. Doepke
, 2009 ND 10, ¶ 21, 760 N.W.2d 131.  On the basis of the record and the district court’s refusal to award costs and attorney fees to either party, we deny Powell’s request for costs and attorney fees on appeal, except for costs allowed under N.D.R.App.P. 39.  
See
 
Solem v. Solem
, 2008 ND 211, ¶ 19, 757 N.W.2d 748.

IV

[¶18] The amended judgment is affirmed.

[¶19] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
“Custody” is now referred to as “primary residential responsibility.”  N.D.C.C. § 14-09-00.1(6).