Hillsborough-southern judicial district
No. 2002-496

IN THE MATTER OF LINDA A. PLAISTED AND GRAHAME J. PLAISTED

Argued: March 13, 2003
Opinion Issued: May 16, 2003

*Law Office of Michael L. Laws,* of Nashua (*Michael L. Laws* on the brief and orally), for the petitioner.

*Barry I. Harkaway,* of Nashua, by brief and orally, for the respondent.

DALIANIS, J. The respondent, Grahame J. Plaisted, appeals from a child support order of the Superior Court (*Hampsey,* J.) requiring him to pay weekly support of $180 while he is unemployed. We reverse in part, vacate in part and remand.

The record contains the following relevant facts. The parties were divorced in March 1998. The respondent was initially ordered to pay $270 per week in child support for his two children, who were in the petitioner's custody. Each party was awarded one child dependency deduction for tax purposes. On July 26, 2001, the respondent filed a petition to modify the child support award after receiving notice from his employer that he would be laid off.

The respondent received compensation from his employer until August 9, 2001, and began receiving unemployment benefits of $2,065 per month beginning August 10, 2001. Following a hearing on December 10, 2001, the superior court issued a temporary order requiring the respondent to pay $110 per week in child support, retroactive to August 10. On April 30, 2002, the court held a final hearing on the respondent's modification petition, in which the respondent testified as to his financial condition and his efforts in seeking employment. He testified that he had over $50,000 in savings that he was able to accumulate since 1998.

In its final order dated May 8, 2002, the superior court ordered the respondent to pay $180 per week in child support commencing June 3, 2002, and continuing until he regained employment. While noting that the award was a deviation from the child support guidelines, the court stated that its decision was based upon "the respondent's present financial circumstances including his considerable cash resources," and that the modification was fair given the "overall financial circumstances of the parties." The court found, however, that the respondent "has been making a continuing good faith effort to obtain employment," rejecting the petitioner's claim that he was intentionally unemployed. The court also ordered that if the respondent did not obtain full-time employment before July 1, 2002, the petitioner would be entitled to both child dependency deductions.

The respondent filed a motion for reconsideration and clarification, which was denied on July 8, 2002.

On appeal, the respondent argues that the trial court erred in its child support award because its decision was based upon assets rather than income, which he claims is inconsistent with the State's child support guidelines. In addition, he argues that the court erred in awarding the petitioner both child dependency deductions.

"We will uphold the trial court's decision unless it is unsupported by the evidence or tainted by an error of law." *In the Matter of Peirce and Peirce*, 146 N.H. 611, 613 (2001). We begin by considering the language of the child support guidelines.

We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Coderre &*

*Coderre*, 148 N.H. 401, 403 (2002). We interpret legislative intent from the statute as written, and, therefore, we will not consider what the legislature might have said or add words that the legislature did not include. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Appeal of Brady*, 145 N.H. 308, 310 (2000).

New Hampshire's child support guidelines are codified in RSA chapter 458-C. The legislature adopted them in order to establish a uniform system to determine the amount of child support to be awarded, to resolve inequities in child support orders and to comply with federal law. *See Peirce*, 146 N.H. at 613; *see also* RSA 458-C:1 (1992 & Supp. 2002). RSA 458-C:3 sets forth the formula by which a court calculates the amount of support to be awarded. Generally, the parents' net income is multiplied by a set percentage and divided between the parents in proportion to their incomes. RSA 458-C:3, I, II(a), (b) (Supp. 2002). "Net income" means "the parents' combined adjusted gross income less standard deductions." RSA 458-C:2, VI. The guidelines expressly provide that an obligor's *total support obligation* is "net income multiplied by the appropriate percentage derived from RSA 458-C:3." RSA 458-C:2, XI.

This formula is known as the "income-shares model and is based on the number of supported children and standardized deductions from the parents' combined gross incomes." 3 C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW § 16.02, at 594 (3d ed. 2002). "Gross income" is defined, in pertinent part, as:

> all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from other government programs ..., including, but not limited to, workers' compensation, veterans' benefits, unemployment benefits, and disability benefits.

RSA 458-C:2, IV. RSA 458-C:3, IV(a), in part, provides, however, that "[i]f the obligor parent's gross income is less than the self-support reserve and the court has determined that the obligor is not voluntarily unemployed or underemployed, the court shall order the child support obligation in the amount of a minimum support order." The minimum support order is defined as "an order of support equal to $50 per month." RSA 458-C:2, V. If an obligor parent is voluntarily unemployed or underemployed, the court may impute income to the obligor parent by considering, as gross

income, "the difference between the amount a parent is earning and the amount a parent has earned." RSA 458-C:2, IV(a).

■ As the guidelines make clear, it is the parent's income that is used to determine the appropriate amount of child support payments. If the legislature had intended to allow courts to consider assets when calculating child support, it could have broadened the guidelines to so provide, as it has with the alimony statute, which expressly allows the court to consider both income and assets when calculating a support award. *See* RSA 458:19, IV(b) (Supp. 2002). Thus, absent legislative direction, we will not add words that the legislature did not see fit to include, *see Coderre,* 148 N.H. at 403, and hold that the trial court cannot consider a parent's assets when calculating child support under the guidelines.

■ The petitioner argues, however, that the court, pursuant to its equity powers, may consider a parent's assets as a special circumstance, justifying an adjustment in child support. There is a rebuttable presumption that a child support award calculated under the guidelines is correct. RSA 458-C:4, II (1992). This presumption may be rebutted, however, by a finding that application of the guidelines would be unjust or inappropriate. *Giles v. Giles,* 136 N.H. 540, 544 (1992). Thus, the trial court may adjust a child support award under the guidelines, either upward or downward, if it finds that a deviation is warranted. *Whealon-Dunberger v. Dunberger,* 137 N.H. 504, 508 (1993). RSA 458-C:5 allows for deviation from the guidelines and provides that:

> I. Special circumstances, including, but not limited to, the following, if raised by any party to the action or by the court, shall be considered and may result in adjustments in the application of support guidelines provided under this chapter. The court shall make written findings relative to the applicability of the following:
>
> . . . .
>
> (j) Other special circumstances found by the court to avoid an unreasonably low or confiscatory support order, taking all relevant circumstances into consideration.

RSA 458-C:5 (Supp. 2002).

While not citing RSA 458-C:5 specifically, or expressly finding that the application of the guidelines amount would be unjust or inappropriate, the trial court modified the respondent's child support obligation given the "overall financial circumstances of the parties." Specifically, the court cited

the respondent's available assets as justifying an upward deviation of his child support obligation.

■ The special circumstances set forth in RSA 458-C:5, I, address matters of support adjustments based upon income and expenses. The use of assets for child support does not fall within the variety of circumstances set forth in RSA 458-C:5, I, and, therefore, assets are not a relevant circumstance that may be considered when adjusting a child support obligation. We will not read such an extension into the statute in light of the overall statutory scheme and the legislature's definitions of "total support obligation" and gross and net incomes. Moreover, if the court were allowed to consider assets in calculating child support, it would necessarily have to consider the assets of both the non-custodial *and* the custodial parent. Permitting the court to consider assets in determining child support could result in the liquidation of assets awarded in a property settlement. Absent legislative guidance, such assets should not be considered when determining child support.

■ We hold, therefore, that the trial court erred by considering the respondent's assets when calculating child support, and that the respondent is liable for the statutory amount of child support commensurate with his income. In addition, because the trial court found that the respondent was not voluntarily unemployed or underemployed, no additional income should be imputed to him. *See* RSA 458-C:2, IV(a).

We recognize that there are legitimate public policy concerns involving the needs of children and the corresponding duty on the part of parents to provide the support necessary to care for them. Consistent with our jurisprudence, however, we will not undertake the extraordinary step of creating legislation where none exists. Rather, matters of public policy are reserved for the legislature. *See Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 641-42 (2002). As a result, we leave to it the task of deciding whether assets should be considered by a trial court when determining child support amounts. We therefore reverse the trial court's child support order and remand this case for further proceedings consistent with this opinion.

The respondent also argues that the trial court erred in awarding the petitioner both child dependency deductions for tax purposes. He asserts that the court's decision on this issue is erroneous because the petitioner did not raise it prior to the final modification hearing, and because the court's decision was unsupported by the evidence. Assuming without deciding that the petitioner was entitled to raise the dependency deduction claim, we hold that the trial court's decision on this matter was in error.

Dependency deductions are a matter of federal law, governed by the Internal Revenue Code (the Code). *See* 26 U.S.C. § 152 (2000). Under the Code, the custodial parent is generally entitled to the dependency exemption unless one of three exceptions applies. *See State DHRS on Behalf of Pearce v. Pearce*, 633 So. 2d 33, 36 (Fla. Dist. Ct. App. 1994) (superseded by statute); *see also* 26 U.S.C. § 152(e). Here, the trial court ruled that the petitioner is entitled to both tax exemptions without discussing the applicability of Code section 152(e). As a result, we vacate the trial court's decision on this issue.

*Reversed in part; vacated in part; and remanded.*

BROCK, C.J., and NADEAU, J., concurred; DUGGAN, J., with whom BRODERICK, J., joined, dissented.

DUGGAN, J., dissenting. Because I conclude that the superior court properly considered the respondent's savings account as a "special circumstance" under RSA 458-C:5 (Supp. 2002) in deviating from the child support guidelines, I respectfully dissent.

The majority reasons that the special circumstances set forth in RSA 458-C:5 are limited to matters of income and expenses, not assets, because the other enumerated special circumstances only describe adjustments based on income and expenses. A plain reading of RSA 458-C:5 does not support this construction. The statute provides for an adjustment under "special circumstances, *including but not limited to,* the following." RSA 458-C:5 (emphasis added). The plain meaning of "including, but not limited to" is that other circumstances, not enumerated or described, may be considered.

In *In re Marriage of DeGuigne*, 119 Cal. Rptr. 2d 430, 436 (Ct. App. 2002), the court examined a similar statute, concluding that "[t]he words 'including but not limited to' reflect the Legislature's intent to give the courts broad discretion to determine when such circumstances apply." Thus, the statute "does not catalogue all of the special circumstances in which a formula amount would not be appropriate." *Id.* The court upheld child support that was three times the guidelines amount because the parents "lived opulently during the marriage" and "[the father] has the ability to continue to support his children at quite a comfortable level consistent with his station in life." *Id.* at 440.

I would similarly conclude that "including but not limited to" reflects the legislature's intent to give courts broad discretion and allow courts to consider a parent's assets in the unusual case, such as this one, where a parent has no current income but has significant cash assets available to

support his children. This conclusion is consistent with the trial court's broad equitable powers in such matters as custody, property division and child support. *In the Matter of Crowe & Crowe*, 148 N.H. 218, 221 (2002).

Other jurisdictions, under different statutory language, allow the courts the equitable authority to consider assets, along with income and expenses, in determining the amount of child support. *See Kelly v. Hougham*, 504 N.W.2d 440 (Wis. 1993); *In re Marriage of Saylor*, 756 P.2d 1149 (Mo. 1988); *Pierce v. Pierce*, 412 N.W.2d 291, 293 (Mich. 1987).

To hold that a court can never consider a parent's assets in determining child support establishes a rigid rule inconsistent with the court's broad equitable power, the language of RSA 458-C:5 and the goal of RSA chapter 458-C to "minimize the economic consequences of divorce on the children." *In the Matter of Dolan & Dolan*, 147 N.H. 218, 222 (2001).

BRODERICK, J., joins in the dissent.