Grafton
No. 2003-380

IN THE MATTER OF TONI E. JEROME AND RAYMOND W. JEROME

Argued: January 15, 2004
Opinion Issued: March 8, 2004

*McGrath Law Firm, P.A.*, of Concord (*Peter McGrath* and *Andrew J. Piela* on the brief, and *Mr. Piela* orally), for the petitioner.

*Braiterman Law Offices*, of Concord (*David J. Braiterman* on the brief and orally), for the respondent.

BRODERICK, C.J. The petitioner, Toni E. Jerome, appeals an order of the Superior Court (*Burling*, J.) modifying the parties' child support obligations to include her personal injury annuity as income for child support purposes. We affirm.

The record supports, or the parties agreed to, the following facts. The petitioner and the respondent, Raymond W. Jerome, were married in 1984 and had a son in 1987. In 1985, the parties sued a security company for personal injuries the petitioner sustained. The case was settled in 1987 for $1 million. Of this sum, the parties received $440,000 in a lump sum payment and the remaining $560,000 was used to purchase an annuity for the petitioner's benefit. Under its terms, the petitioner was to receive: (1) $2,083 monthly for twenty-seven years, ending on January 1, 2014; (2) $4,166 monthly from February 1, 2014 for life thereafter; and (3) ten lump sum payments of $100,000 every five years beginning on February 1, 1992.

The parties divorced in 1996. In their divorce stipulation, they agreed that the petitioner would pay the respondent a lump sum of $50,000 and that the remaining annuity payments would belong to her, "free and clear of any interest of the [respondent]."

The parties agreed to joint legal custody of their son. The petitioner was to have primary physical custody and the respondent was granted liberal visitation rights. They agreed that child support would be in accordance with the child support guidelines and that the guidelines would govern "all [such] payments." *See* RSA ch. 458-C. Initially, the respondent was to pay the petitioner $172 per month for the child's support. Although the petitioner included the annuity payments in her support affidavit, the

parties elected not to count these payments as income in calculating their child support obligations.

In June 2002, the respondent petitioned to modify the custody arrangement. He sought primary physical custody of the child because the petitioner had indicated that their son could no longer live with her and because her boyfriend had physically threatened the child. The court issued a temporary order that awarded the respondent primary physical custody and directed the petitioner to pay child support. It further ruled that the petitioner's annuity payments were not income for purposes of calculating child support under the guidelines. Its ruling was based upon the parties' 1996 divorce papers, which the court found reflected that the parties treated the annuity as property. The respondent moved for reconsideration, which the court denied.

The trial court revisited the issue of whether the petitioner's annuity payments were income for child support purposes following a hearing related to her failure to pay her son's medical bills. The respondent argued that the court should have included the monthly annuity payments as income; the petitioner disagreed. *See* RSA 458-C:2, IV (1992). The parties agreed, however, that no special circumstances warranted deviation from the uniform child support guidelines. *See* RSA 458-C:5 (Supp. 2003). The court ruled that its temporary order excluding the annuity payments from the child support calculation was error. Accordingly, it recalculated child support to include them.

On appeal, the petitioner contends that the trial court erred by: (1) treating her annuity payments as income for child support purposes; (2) modifying the parties' marital property settlement; and (3) modifying her child support obligation as of the date of the respondent's petition to modify. We address each contention in turn.

Trial courts have broad discretion in reviewing and modifying child support orders. *In the Matter of Breault & Breault*, 149 N.H. 359, 361 (2003). Because trial courts "are in the best position to determine the parties' respective needs and their respective abilities to meet them," we will overturn modification orders only if it clearly appears that the trial court engaged in an unsustainable exercise of discretion. *Id.*

## I

The petitioner first argues that her annuity payments are not "income" within the meaning of RSA chapter 458-C. When construing a statute's meaning, we are the final arbiters of legislative intent. *Franklin Lodge of Elks v. Marcoux*, 149 N.H. 581, 585 (2003). We examine the statute's language, ascribing to its words their plain and ordinary meanings, *see id.*,

and interpret it in the context of the overall legislative scheme and not in isolation, *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 483 (2003).

 For the purposes of calculating a parent's child support obligation, RSA 458-C:2, IV defines gross income as:

> all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, *annuities*, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from other government programs ... including, but not limited to, workers' compensation, veterans' benefits, unemployment benefits, and disability benefits ....

(Emphasis added.) Plainly, annuities are listed in the statute. Pursuant to the legislative scheme, all items includable as "gross income" are to be used to determine the parties' total support obligation. *In the Matter of Feddersen & Cannon*, 149 N.H. 194, 197 (2003); *see* RSA 458-C:3 (Supp. 2003). We conclude, therefore, that a plain reading of the statute supports the trial court's inclusion of the annuity receipts in the petitioner's gross income for child support purposes.

The petitioner contends that no portion of her personal injury settlement was intended to compensate her for lost income and, therefore, it should not be included in her gross income for child support purposes. *See Villanueva v. O'Gara*, 668 N.E.2d 589, 592-93 (Ill. App. Ct. 1996). She asserts that her settlement was intended to make her whole and should not have been treated as income to calculate her child support obligation. *See id.*

The plain language of the statute, however, refutes the petitioner's argument. The statutory definition of "gross income" is *not* limited to wages and wage equivalents; for example, it includes items such as "lottery or gambling winnings," "alimony," "interest," and "dividends." RSA 458-C:2, IV. The statute, by its plain terms, excludes payments from public assistance programs from the definition of "gross income"; it does not exclude proceeds from personal injury settlements. *Id.* We cannot limit the definition of "gross income" as the petitioner suggests by adding language to the statute that the legislature did not see fit to include. *See Monahan-Fortin Properties v. Town of Hudson*, 148 N.H. 769, 771 (2002).

 Nor can we presume that, when the legislature used the word "annuities," it intended to refer to certain annuities and not others. We

cannot create a judicial exception to the statute's plain language or impose upon the statute policy considerations that the plain language does not support. We can examine only what the legislature said, not what it might have said. *Progressive N. Ins. Co. v. Enterprise Rent-A-Car Co.*, 149 N.H. 489, 490 (2003). Absent any indication that the legislature intended the word "annuities" to mean all annuities except those from a personal injury settlement, we assume that the legislature intended to include *all* annuities, regardless of their source. *See Sherburne County Social Serv. v. Riedle*, 481 N.W.2d 111, 112 (Minn. Ct. App. 1992).

Including the annuity payments in this case as income is not only required by the plain language of the statute but is also consistent with its stated purpose: To "minimize the economic consequences [of divorce] to children." RSA 458-C:1 (1992); *see In the Matter of Dolan and Dolan*, 147 N.H. 218, 221 (2001). Doing so also complies with one of the guiding principles of RSA chapter 458-C, which is that "[t]he children in an obligor's initial family are entitled to a standard of living equal to that of the obligor's subsequent families." RSA 485-C:1, II. The parties' son would have enjoyed the standard of living made possible by the annuity payments had the parties remained married. Their divorce did not negate his entitlement.

Courts in other States with statutes that, like RSA 458-C:2, IV, define income for child support purposes to include annuities have ruled similarly. *See Capano v. Capano*, Nos. CN91-8348, 899-91, 1992 WL 91573, at *3-4 (Del. Fam. Ct. Mar. 30, 1992); *Riedle*, 481 N.W.2d at 112; *Taranto v. Dept. of Social Services*, 962 S.W.2d 897, 900-01 (Mo. Ct. App. 1998); *cf. In re Marriage of Fain*, 794 P.2d 1086, 1087 (Colo. Ct. App. 1990) (ruling that it was proper to include father's payments from structured settlement of personal injury lawsuit where statute broadly defined "gross income" to include "income from any source" and did not specifically exclude personal injury benefits); *Arneson v. Arneson*, 670 N.W.2d 904, 914-16 (S.D. 2003) (annuity payments from structured settlement of medical malpractice suit were either income to or assets of father available for child support purposes; however, court affirmed lower court's equitable discretion to exclude portions of settlement necessary for husband's care).

For instance, the relevant statute in *Riedle*, like RSA 458-C:2, IV, defined income to include annuity payments. *Riedle*, 481 N.W.2d at 112. The court concluded that the statutory reference included *any* annuity, regardless of its source, including annuity payments from the structured settlement of a personal injury lawsuit. *Id.* The court ruled that "[i]n the absence of any legislative intent to limit the definition," it had to "conclude the legislature intended to include any ... payments from an annuity,

regardless of the annuity's source." *Id.*; *see also Mower County Human Services v. Heuman,* 543 N.W.2d 682, 684 (Minn. Ct. App. 1996).

Similarly, in *Taranto,* 962 S.W.2d at 900, the court concluded that because the statutorily-required form defined "gross income" for child support purposes to include income from annuities, it was required to include the father's receipt of annual personal injury settlement annuity payments as income.

The father in *Taranto,* like the petitioner in this case, contended that it is unfair to include annuity payments from a personal injury settlement as income for child support purposes. *Id.* at 901-02. As the father in *Taranto* argued:

> [I]n many cases a part of those payments is intended to reimburse the recipient not just for lost income, but also for past and future medical expenses and pain and suffering. If these payments are all included in gross income and must be used to pay child support, then the recipient may not have sufficient money left to pay future medical expenses.

*Id.* at 902.

The court in *Taranto* acknowledged that these types of considerations "have led some courts in other states to distinguish between that portion of a personal injury settlement intended to compensate for lost wages and that portion intended to compensate for medical care or pain and suffering." *Id.* These courts include the former and exclude the latter. *Id.*; *see Villanueva,* 668 N.E.2d at 592-93; *Whitaker v. Colbert,* 442 S.E.2d 429, 431 (Va. Ct. App. 1994); *cf. Kelly v. Kelly,* 775 So. 2d 1237, 1243 (La. Ct. App. 2000) (excluding lump sum settlement because it is a fund, not an income flow); *Department of Human Services v. Monly,* 704 A.2d 401, 402-03 (Me. 1998) (excluding lump sum settlement of personal injury suit because statute pertains only to income from "ongoing source"). *But see Otterson v. Otterson,* 571 N.W.2d 648, 651 (N.D. 1997) (where statute defines income to mean "any form of payment, regardless of source, owed to an obligor, including any earned, unearned, taxable or nontaxable income," and does not explicitly exclude personal injury settlement proceeds, it was appropriate to include mother's receipt of lump sum settlement of personal injury claim); *Klemetsrud v. Klemetsrud,* No. 02A01-9306-CV-00150, 1994 WL 556365 at *2-4 (Tenn. Ct. App. Oct. 12, 1994) (where statute defines "gross income" as "all income from any source ... whether earned or unearned," and does not exclude personal injury proceeds, it was appropriate to include proceeds from husband's personal injury lawsuit).

We are not persuaded by these cases for two reasons. First, as the court in *Taranto* noted, "[t]he decisions in these cases were possible because the governing statutes in the states involved were narrower and did not mandate that the entire settlement be included in gross income." *Taranto,* 962 S.W.2d at 902. For instance, the statute at issue in *Villanueva* did not define the term "income." *Villanueva,* 668 N.E.2d at 592. Absent any indication from the legislature as to the intended meaning of the word, the court relied, in part, upon the dictionary definition of it. *Id.* We, however, must adhere to New Hampshire's legislative scheme, which defines gross income to include all annuities and makes no distinction between annuities from personal injury settlements and other kinds of annuities.

Second, the courts making these distinctions did so in the context of lump sum settlements, not annuity payments. *See id.* at 591; *Whitaker,* 442 S.E.2d at 430. A lump sum settlement is akin to an asset, *see Kelly,* 775 So. 2d at 1243, while annuity payments provide a regular income flow. Under our legislative scheme, assets are not "income" for child support purposes. *In the Matter of Plaisted & Plaisted,* 149 N.H. 522, 523-25 (2003).

Although RSA 458-C:2, IV mandates including all kinds of annuities, including those from personal injury settlements, in the calculation of "gross income," the statutory scheme provides other means for courts to remedy any unfairness that may result. RSA 458-C:5, I(j) permits courts to deviate from the uniform guidelines when applying them would result in a confiscatory support order. *Feddersen,* 149 N.H. at 198; *see also Gallegos v. Gallegos,* 846 P.2d 831 (Ariz. 1992) (where statutory scheme permits court to deviate from guidelines when to follow them would be inappropriate or unjust, excluding father's extraordinary medical expenses from personal injury settlement amount was appropriate); *In re Marriage of Durbin,* 823 P.2d 243, 248-49 (Mont. 1991) (court must include father's receipt of lump sum settlement when considering child support modification, but must also deviate from guidelines because to apply them would be unjust or inappropriate), *abrogated on other grounds by In re Marriage of Kovash,* 893 P.2d 860 (Mont. 1995) *and In re Marriage of Cowan,* 928 P.2d 214 (Mont. 1996).

■ Moreover, RSA 458-C:7 (Supp. 2003) grants parties the statutory right to seek review of an award three years after its issuance or at any time based upon a substantial change of circumstances. *Feddersen,* 149 N.H. at 198. In the instant case, the parties stipulated that there were no special circumstances to warrant deviating from the uniform guidelines. Accordingly, the trial court did not err by calculating the child support obligations of the parties in strict compliance with the guidelines.

## II

The petitioner contends that because the parties treated her personal injury settlement as marital property when they divorced, the court could not treat it as income for child support purposes. This argument is flawed for two reasons.

■ First, contrary to the petitioner's assertions, the trial court's ruling is consistent with the parties' divorce stipulation. The parties expressly agreed that their child support obligations would be determined in accordance with the child support guidelines set forth in RSA chapter 458-C. Second, even if the parties had agreed that the personal injury settlement was marital property, the trial court would not be precluded from treating it as income for child support purposes. As we explained in *Rattee v. Rattee*, 146 N.H. 44, 48-49 (2001), property division and child support serve different functions and are governed by different requirements. "The property division is an allocation of assets between the parents; each spouse receives something from the division. In contrast, the child of divorced parents receives nothing from the property division. A child support order gives the child fair support from the non-custodial parent's income." *Id.* at 49 (quotation and ellipsis omitted).

The child support guidelines set forth in RSA chapter 458-C "mandate that an obligor's entire income be considered." *Id.* at 48. Treating the petitioner's settlement as property for equitable distribution purposes did not reduce the income she received and properly had no effect upon calculating her child support obligation. *See id.*

## III

The petitioner contends that the trial court lacked authority to modify her support obligation from the date of the respondent's petition to modify. We disagree. The trial court has such authority by statute. *See* RSA 458:17, VIII (1992); *Feddersen*, 149 N.H. at 200.

■ The petitioner mistakenly terms the court's order a "retroactive" adjustment of child support. As we explained in *Maciejczyk v. Maciejczyk*, 134 N.H. 343, 345 (1991), a child support order is not retroactive when it modifies support obligations in light of changed circumstances effective as of the date of the petition to modify. In this case, the court modified the parties' support obligations based upon the change in custody and ordered the modification effective as of the date of the respondent's petition to modify. The court's order was therefore not retroactive. The petitioner's

reliance upon cases concerning the harshness of retroactive orders is thus misplaced.

The petitioner argues that this case is unique because the court's final order modifying the parties' support obligations was not the first, but was the third or fourth order issued upon the respondent's petition to modify. She argues that while the trial court could have made its first order effective as of the date of the respondent's petition to modify, it could not make its third or fourth order effective as of that date. The petitioner cites no support for this proposition and we reject it.

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.