Hillsborough-southern judicial district
No. 2005-273

IN THE MATTER OF STATE OF NEW HAMPSHIRE AND MARK A. TAYLOR

Argued: February 8, 2006
Opinion Issued: July 19, 2006

*Gawryl & MacAllister*, of Nashua (*Jared O'Connor* on the brief and orally), for the intervenor, Myrna Bellot.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Scott H. Harris* and *Margaret R. (Crabb) Kerouac* on the brief, and *Mr. Harris* orally), for the respondent, Mark A. Taylor.

The State of New Hampshire filed no brief.

DUGGAN, J. The respondent, Mark A. Taylor, appeals the recommendation of the Master (*Love*, M.) approved by the Superior Court (*Hicks*, J.) that his child support obligations be modified following his receipt of a lump sum personal injury settlement. We vacate and remand.

The record supports, or the parties agree to, the following facts. Taylor's child was born in 1994 and now lives with her legal guardian, the intervenor, Myrna Bellot. The original child support order, effective January 1, 2001, required Taylor to pay Bellot fifty dollars per month in child support. In August 2003, Taylor was struck by a drunk driver and suffered the loss of his leg. As a result, he received a lump sum personal injury settlement award. Taylor also receives a monthly Social Security Disability Income (SSDI) benefit for his injury. The child receives an SSDI benefit of $119 per month, which is paid to her directly.

Bellot filed a petition to modify child support. The superior court issued a modification order on January 31, 2005, ruling that Taylor's lump sum personal injury settlement was includable in his "gross income." The court then calculated Taylor's monthly obligation by prorating his lump sum settlement award over his remaining life expectancy. It ordered him to pay $502 per month in child support and to create a trust in the amount of $44,905 naming the child as the beneficiary. The court refused to allow Taylor a dollar for dollar credit for the $119 monthly SSDI benefit received by his child.

On appeal, Taylor argues that the trial court erred by: (1) treating the lump sum personal injury settlement as "gross income" within the meaning of RSA chapter 458-C (2004 & Supp. 2005); (2) dividing his personal injury settlement over his projected lifetime to impute an income figure for the purpose of calculating child support; and (3) not providing a dollar for dollar child support credit for the SSDI payments received by the child. We address each argument in turn.

Trial courts have broad discretion in reviewing and modifying child support orders. *In the Matter of Jerome & Jerome*, 150 N.H. 626, 628 (2004). Because the trial court is in the best position to determine the parties' respective needs and their respective abilities to meet them, we will not overturn modification orders absent an unsustainable exercise of discretion. *Id.*

*I. Lump Sum Personal Injury Settlement*

The first issue is whether the trial court erred in ruling that the lump sum personal injury settlement is "gross income" within the meaning of RSA chapter 458-C. We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Plaisted & Plaisted*, 149 N.H. 522, 523 (2003). We interpret legislative intent from the statute as written, and, therefore, we will not consider what the legislature might have said or add words that the legislature did not include. *Id.* at 524. We interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.*

For purposes of calculating a parent's child support obligation, RSA 458-C:2, IV (2004) defines gross income as:

> All income from any source, whether earned or unearned, *including, but not limited to*, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from other government

> programs ... including, but not limited to, workers' compensation, veterans' benefits, unemployment benefits, and disability benefits.

(Emphasis added.) While trial courts have discretion to adjust a child support award based upon special circumstances, *see* RSA 458-C:4, II (2004), the legislative scheme requires that all items includable as "gross income" be considered to determine the parties' total support obligation. *In the Matter of Feddersen & Cannon*, 149 N.H. 194, 197 (2003).

Taylor argues that because the statutory definition of gross income does not explicitly include lump sum personal injury settlements, we must look to other definitions of "income." He urges us to rely upon definitions of "income" from two dictionaries and three United States Supreme Court cases where the Court considered whether various items were "income" under federal income taxation statutes. *See O'Gilvie v. United States*, 519 U.S. 79, 84-86 (1996); *Eisner v. Macomber*, 252 U.S. 189, 219 (1920); *Commissioner of Internal Rev. v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955).

Bellot argues that we need not look beyond the statute to define gross income. She argues that the words "including, but not limited to" in the definition of "gross income," "act as a starting point and the enumerated items that follow are an illustration of a few applicable terms." She argues that "gross income" must be interpreted broadly to include lump sum personal injury settlements in light of the policy goals of the child support guidelines.

■ We have previously addressed whether the definition of "gross income" under the child support guidelines includes items not specifically listed in RSA 458-C:2, IV. *See, e.g., In the Matter of Dolan and Dolan*, 147 N.H. 218, 221-22 (2001); *Feddersen*, 149 N.H. at 196; *Jerome*, 150 N.H. at 629. We did not consider the dictionary definitions of "income" in any of these cases and focused instead on whether the legislature intended to include the item in question within the statutory definition of "gross income." Similarly, we have no reason to turn to dictionary definitions in this case.

■ The objectives of the child support guidelines are to reduce the economic consequences of divorce on children and ensure that children enjoy a standard of living equal to that of the noncustodial parent's subsequent family. RSA 458-C:1, II (Supp. 2005); *Dolan*, 147 N.H. at 222. These same objectives are present in a non-divorce situation where the parties never married, but child support obligations exist nonetheless. These objectives differ from the objectives of the federal income taxation

statutes. *See Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 542 (1979). Therefore, how federal income taxation statutes define "income" is of little relevance to our interpretation of gross income under the child support guidelines. *Cf. Rattee v. Rattee*, 146 N.H. 44, 48 (2001).

Our prior rulings support treating lump sum personal injury settlements as gross income. In *Jerome*, we considered whether a personal injury settlement received as an annuity was income under the child support guidelines. *Jerome*, 150 N.H. at 628-32. We held that the payments were gross income because the term "annuities" is explicitly listed as one of the potential sources of income in RSA 458-C:2, IV. *Id.* at 629, 632. We stated that, "[RSA 458-C:2, IV] by its plain terms, excludes payments from public assistance programs from the definition of 'gross income'; it does not exclude proceeds from personal injury settlements." *Id.* at 629.

Taylor relies upon our statement in *Jerome* that "[a] lump sum settlement is akin to an asset while annuity payments provide a regular income flow." *Id.* at 632. Taylor does not read this statement in the proper context. We made this statement while summarizing a distinction made by the court in *Kelly v. Kelly*, 775 So. 2d 1237, 1243 (La. Ct. App. 2000), *cert. denied*, 787 So. 2d 1001 (La. 2001), *overruled on other grounds by Salles v. Salles*, 928 So. 2d 1, 11-12 (La. Ct. App. 2005), between that portion of a personal injury settlement intended to compensate for lost wages and the portion intended to compensate for medical care and pain and suffering. This statement was clearly not the holding in *Jerome*.

More fundamentally, a conclusion that a personal injury settlement paid as a lump sum is not gross income would be inconsistent with our holding in *Jerome* that personal injury settlements paid as annuities are gross income. Such a conclusion might encourage litigants to structure personal injury settlements as lump sum settlements rather than annuities to avoid child support obligations. We do not believe that the legislature intended that two similarly situated obligors would have different child support obligations based upon nothing more than the means by which they receive settlement payments.

Our reasoning in *Feddersen* is consistent with *Jerome*. In *Feddersen*, we treated a one-time, nonrecurring post-divorce payment of a patent infringement settlement of more than three million dollars as "gross income" for child support purposes. *Feddersen*, 149 N.H. at 196. Taylor argues that *Feddersen* is distinguishable because the patent infringement settlement represented an accession to wealth, while Taylor's personal injury settlement was intended instead to make him whole by compensating him for physical and economic losses. We previously rejected the argument that personal injury settlements should not be

treated as "gross income" for child support purposes because they are intended to make the recipient whole: "The plain language of the statute ... refutes [this] argument." *Jerome*, 150 N.H. at 629. "The statutory definition of 'gross income' is *not* limited to wages and wage equivalents; for example, it includes items such as 'lottery or gambling winnings,' 'alimony,' 'interest,' and 'dividends.'" *Id.*

Our reasoning in *Jerome* and *Feddersen* is supported by cases from other jurisdictions where courts have ruled that lump sum personal injury settlements are income for child support purposes under statutory provisions similar to RSA 458-C:2, IV. *See Otterson v. Otterson*, 571 N.W.2d 648, 651 (N.D. 1997); *In re Marriage of Fain*, 794 P.2d 1086, 1087 (Colo. Ct. App. 1990). In both cases, the court ruled that the legislature intended to include lump sum personal injury settlements as "income" under the applicable statute because the statute did not expressly exclude them from the enumerated list. *Otterson*, 571 N.W.2d at 651; *Fain*, 794 P.2d at 1087. In *Darby v. Darby*, 686 A.2d 1346, 1349 (Pa. Super. Ct. 1996), *appeal denied*, 698 A.2d 594 (Pa. 1997), under a statute substantively similar to RSA 458-C:2, IV, the court stated that:

> The award as actually received by appellant is a single fund which appellant may expend in his discretion. The whole tort award is subject to all appellant's debts. It would, indeed, call into question the sanity of the law if this court were to rule that the tort award [is] available to pay debts to the butcher, the baker and the candlestick maker but not debts to appellant's child for support.

(Quotation omitted.) We find the reasoning of these cases persuasive.

Moreover, in light of the fact that the child support guidelines treat lump sum workers' compensation settlements as "gross income," *see* RSA 458-C:2, IV, we believe that it would be inconsistent with the child support guidelines to treat lump sum personal injury settlements as other than "gross income."

■ Taylor also argues that "it is impermissible for courts to treat the corpus of a lump sum personal injury settlement as an asset for purposes of settling a marital estate, but then as income for child support computations." We note that we are not deciding whether a lump sum personal injury settlement received prior to a divorce is an asset or income for the purpose of calculating child support. However, in *Jerome*, where a personal injury settlement was paid out as an annuity, we noted that "even if the parties had agreed that the personal injury settlement was marital

property, the trial court would not be precluded from treating it as income for child support purposes." *Jerome*, 150 N.H. at 633. We stated that:

> [P]roperty division and child support serve different functions and are governed by different requirements. The property division is an allocation of assets between the parents; each spouse receives something from the division. In contrast, the child of divorced parents receives nothing from the property division. A child support order gives the child fair support from the non-custodial parent's income.

*Id.* (quotation omitted); *see also* RSA 458:16-a, II (2004). Accordingly, we reject Taylor's argument and conclude that the legislature intended to include a lump sum personal injury settlement within the definition of "gross income" in RSA 458-C:2, IV.

## II. Calculation of Child Support

We next consider whether the trial court acted within its discretion when it prorated the amount Taylor received from his personal injury settlement over each month of his remaining expected lifetime to calculate his monthly child support obligation. In calculating Taylor's obligation, the trial court relied upon RSA chapter 458-C and made the following finding:

> [The statute] . . . provide[s] the Court with the discretion to order [that] child support on one time income be paid when the income is received rather than be included in the weekly, biweekly or monthly calculation. This would neither be fair nor make sense in the instant case. Given the obligor's permanent disability, it makes more sense to prorate the income over the remaining life expectancy of the obligor in order to determine his monthly income on this amount.

Taylor challenges the trial court's calculation, arguing that it constitutes impermissible "income-averaging." Bellot argues that the trial court acted within its discretion when it calculated Taylor's support obligation.

"Our case law is clear that trial courts should not employ income-averaging over a number of years to determine child support obligations. Rather, child support should be determined on the basis of present income." *Rattee v. Rattee*, 146 N.H. at 46 (citation omitted). In *Rattee*, we ruled that the trial court improperly engaged in "income-averaging" when it averaged the obligor's income over several years prior to the divorce to arrive at an income figure for child support purposes. *Id.*

In *Hillebrand v. Hillebrand*, 130 N.H. 520, 526 (1988), we described "income-averaging" as "tak[ing] a three-year average of defendant's

income for purposes of determining the amount of support payments." There, the obligor challenged the trial court's refusal to use income-averaging. *Hillebrand*, 130 N.H. at 526. Rather than take a three-year average of the obligor's income for purposes of calculating child support, the trial court had used only his current income. *Id.* We upheld the trial court's order, stating that "nothing in the [child support guidelines] . . . suggests that income-averaging is a valid means for determining child support obligations." *Id.* Noting that the guidelines allow either party to petition the trial court for a modification of support payments any time a change of circumstances warrants it, we held that the trial court correctly considered only the obligor's present income, rather than recent income fluctuations, in calculating an initial support order or a modification. *Id.*; *see* RSA 458:32 (2004).

Among jurisdictions that have considered whether the trial court may average the obligor's past income over a preceding period of years, we are aware of no other that absolutely prohibits income-averaging. In some jurisdictions, the relevant child support guidelines specifically authorize trial courts to engage in income-averaging. *See, e.g., Keturi v. Keturi*, 84 P.3d 408, 413 (Alaska 2004); *Scott G.F. v. Nancy W.S.*, No. H-04-015, 2005 WL 1314432, at *6 (Ohio Ct. App. June 3, 2005), *appeal denied*, 836 N.E.2d 582 (Ohio 2005); *Hughes v. Hughes*, 706 N.W.2d 569, 584 (Neb. Ct. App. 2005); *Lloyd v. Lloyd*, 755 N.E.2d 1165, 1169-70 (Ind. Ct. App. 2001). Among those jurisdictions in which income-averaging is not expressly authorized by statute, all but New Hampshire permit trial courts the discretion to use income averaging. *See, e.g., Tipler v. Edson*, No. A05-1518, 2006 WL 1390439, at *3 (Minn. Ct. App. May 23, 2006); *see also Roberts v. Roberts*, 924 So. 2d 550, 553 (Miss. Ct. App. 2005), *cert. denied*, 927 So. 2d 750 (Miss. 2006); *In re Marriage of Hagerla*, 698 N.W.2d 329, 332 (Iowa Ct. App. 2005); *In re Marriage of Garrett*, 785 N.E.2d 172, 177 (Ill. Ct. App.), *appeal denied*, 792 N.E.2d 306 (Ill. 2003); *Fleenor v. Fleenor*, 992 P.2d 1065, 1070 (Wyo. 1999).

This case, however, presents a different issue from *Rattee, Hillebrand* and cases from other jurisdictions concerning income-averaging. Here, the trial court did not estimate Taylor's income based upon a retrospective average of his income over the past several years. Instead, it estimated his income *prospectively* by prorating his lump sum settlement award over his estimated remaining life expectancy.

We have never addressed whether the trial court may calculate an obligor's income by prorating the proceeds of a personal injury settlement award over a future period of time. The child support guidelines provide us with no guidance. Among jurisdictions that have addressed this issue, however, we are aware of no court that describes the prorating of a

personal injury settlement over a future time period for purposes of calculating child support as "income-averaging"; instead, these courts describe the process as "allocation of proceeds." *See* Annotation, *Consideration of Obligor's Personal-Injury Recovery or Settlement in Fixing Alimony or Child Support*, 59 A.L.R.5TH 489, 525-27 (1998). More importantly, however, no court holds that trial courts may not prospectively allocate settlement proceeds to calculate monthly child support obligations. *See id.*

Where obligors receive personal injury settlements as a lump sum, prorating settlement proceeds over a future time period has been held permissible. *See, e.g., Mehne v. Hess*, 553 N.W.2d 482, 489 (Neb. Ct. App. 1996); *Darby*, 686 A.2d at 1349-50. The court in *Mehne* reasoned that monthly child support should be calculated by dividing the total settlement amount by the number of months of the children's remaining minority. Such an allocation would permit the children "to benefit from an increase in support from [the obligor] over the entire time they are entitled to receive it" and would not overburden the obligor. *Id.* at 489. It also observed that "it would be unwise to define one rule to be applied in all cases in which a settlement award is at issue in this context. The appropriate treatment of such awards depends upon the circumstances of each case, with the best interests of the children as the paramount focus." *Mehne*, 553 N.W.2d at 488. In other cases where obligors received payment from personal injury settlements as an annuity every five years, prorating the proceeds over the five-year period has been held to be permissible. *See, e.g., Mower County Human Services v. Hueman*, 543 N.W.2d 682, 683-84 (Minn. Ct. App. 1996); *Cleveland v. Cleveland*, 592 A.2d 20, 21, 23 (N.J. Super. Ct. App. Div. 1991).

Further support for Bellot's argument that the trial court acted within its discretion in allocating Taylor's settlement award is the established principle that the trial court may, as part of a child support order, require the obligor to create a trust fund for the child's benefit. *See Feddersen*, 149 N.H. at 200-01. We see little difference between a trust fund and an allocation of settlement proceeds requiring the obligor to make monthly support payments to the child. The creation of a trust fund may serve the child's interests better than would a future allocation of the settlement by assuring the certainty of monthly support payments. Indeed, in most cases such as this, the creation of a trust is the preferred method.

There is a rebuttable presumption that the trial court must strictly apply the child support guidelines when calculating a child support order or modification. RSA 458-C:4, II (2004); *Plaisted*, 149 N.H. at 525. However, the guidelines permit the trial court to deviate from their strict

application upon making a written finding that application of the guidelines would be unjust or inappropriate in light of "[s]ignificantly high or low income of the ... obligor," RSA 458-C:5, I(b) (Supp. 2005), or "special circumstances found by the court to avoid an unreasonably low or confiscatory support order," RSA 458-C:5, I(j) (Supp. 2005); RSA 458-C:4, II; *see Plaisted*, 149 N.H. at 525. When the trial court makes such a finding, nothing in RSA chapter 458-C prohibits it from allocating the proceeds of a lump sum settlement award over an appropriate time period for the purpose of calculating child support. In determining what time period is appropriate, we agree with the reasoning in *Mehne* that it would be unwise to define one rule to be applied, and that the appropriate treatment of such awards depends upon the circumstances of each case, with the best interests of the child as the paramount focus. *Mehne*, 553 N.W.2d at 488.

■ In this case, the trial court made a written finding of "the special circumstances of [Taylor], namely the receipt of a substantial settlement in a personal injury claim and the corresponding uncertainty of any future employment." After making this written finding, and in light of the special circumstances of this case, the trial court acted within its discretion when it calculated Taylor's support obligation by allocating the settlement award over his remaining life expectancy. *See* RSA 458-C:4, II.

*III. SSDI Credit*

Lastly, we consider whether the trial court erred by refusing to allow Taylor a dollar for dollar credit for the $119 SSDI benefit received each month by the child. Bellot concedes that the trial court erred by refusing to allow Taylor a credit for the SSDI benefit, but points out that the court also did not include Taylor's SSDI benefit in his income. Thus, Bellot argues, any error was harmless because Taylor's monthly child support obligation would actually have been higher than the amount ultimately ordered if the court had considered his SSDI benefits and the SSDI benefits received by the child.

"We choose to follow the majority of States and allow the obligor credit for his or her child support obligation as a *per se* rule." *In the Matter of Angley-Cook & Cook*, 151 N.H. 257, 259 (2004); *see also* Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child*, 34 A.L.R.5TH 447 (2004 & Supp. 2005). Our holding in *Angley-Cook* is directly on point. There, we held that the trial court must allow the noncustodial parent a dollar for dollar credit for Social Security retirement benefits received by the child. *Angley-Cook*, 151 N.H. at 259. We stated that "we

see no reason to treat [Social Security] retirement benefits any differently than disability benefits." *Id.* (quotation omitted).

■ Under the *per se* rule of *Angley-Cook*, Taylor is entitled to a dollar for dollar credit for the $119 in monthly SSDI benefits received directly by his child. We find that the trial court thus engaged in an unsustainable exercise of discretion by refusing to allow a credit to Taylor against his monthly support obligations. *Cf. id.* We leave it for the trial court to determine whether Taylor's dollar for dollar credit is offset by his receipt of monthly SSDI benefits. Accordingly, and in order to afford the trial court the opportunity to fully reconsider Taylor's entire child support obligation, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.