NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

2nd Circuit Court-Lebanon Family Division
Case No. 2022-0693
Citation: In the Matter of Landgraf & Landgraf, 2024 N.H. 41

IN THE MATTER OF GREGORY LANDGRAF AND NATASHA LANDGRAF

Argued: September 19, 2023
Opinion Issued: August 13, 2024

Law Office of Joshua L. Gordon, of Concord (Joshua L. Gordon on the brief), and Atwood & Cherny, of Boston, Massachusetts (Mary Beth L. Sweeney and Catharine V. Blake on the brief, and Mary Beth L. Sweeney orally), for the petitioner.

Shaheen & Gordon, PA , of Nashua (Andrew J. Piela on the brief and orally), for the respondent.

BASSETT, J.

[¶1] The respondent, Natasha Landgraf (wife), and the petitioner, Gregory Landgraf (husband), are parties in a current divorce proceeding and have two minor children together. In this interlocutory appeal, the wife challenges orders of the Circuit Court (Mace, J.) determining the amount of the husband's temporary child support obligation. See Sup. Ct. R. 8. The interlocutory appeal statement approved by the trial court sets forth two questions related to whether irregular income the husband received is available for child support.

We answer both interlocutory questions in the affirmative and remand for further proceedings consistent with this opinion.

[¶2] We accept the statement of facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary. See In the Matter of Liquidation of Home Ins. Co., 175 N.H. 363, 364 (2022). In 2018, the trial court issued a final divorce decree, which included a child support award. The wife appealed the decree to this court, which vacated and remanded the trial court's determination as to the percentage of the husband's irregular income that he should pay as child support.

[¶3] In 2020, on remand from this court, the circuit court issued a new temporary child support order. The circuit court ordered that, if the husband receives irregular income, he must pay the wife a percentage of that income as child support. See RSA 458-C:2, IV(c) (2018). It ordered the husband to pay a percentage of his irregular income in child support that is less than the applicable percentage set forth in the child support formula. See RSA 458-C:3, I(a) (2018). The wife moved for reconsideration, arguing that the court erred by requiring the husband to pay a lower percentage of his irregular adjusted gross income than the applicable percentage calculated under the child support guidelines that applied to their "net income." The husband also moved for clarification and reconsideration. He requested that the court clarify that the cash distributions he received from New England Industries (NEI), a subchapter S corporation of which he is a 50% shareholder, to offset his shareholder tax liability, and from which no taxes were withheld by NEI, were not income for child support purposes. See In the Matter of Albert & McRae, 155 N.H. 259, 264 (2007) (S corporation's income tax liability is paid by its individual shareholders allowing the corporation to avoid income tax liability); 26 U.S.C. §§ 1361(a)(1), 1362(a) (defining "S corporation"), 1366(a)-(b) (2018) (S corporation "[p]ass-thru" of shareholder tax liability).

[¶4] The trial court denied both parties' motions. The court stated that it had not erred when — in reaching its temporary support award — it treated NEI's distributions to the husband to offset his shareholder tax liability as "gross income." It explained that the child support formula is based upon a parent's "net income," see RSA 458-C:2, VI (2018), which it interpreted as adjusted gross income minus taxes. It clarified that its downward deviation from the percentage of net income provided in the child support formula as applied to the husband's irregular income "was meant to represent" the husband's "share of the couple's 'net income'" adjusted for an approximation of the husband's "tax burden on those distributions." The court also invited the parties to prepare an interlocutory appeal statement on those issues.

[¶5] Before the interlocutory appeal was filed, the wife moved for contempt because the husband had not paid child support on two irregular

2

payments he received through payroll and from which federal taxes and Medicare were withheld.  The husband objected, arguing that these payments should not be deemed income for child support purposes because they were intended to reimburse him for premiums paid for a "succession insurance" policy that in the event of the death of the other 50% shareholder would provide funds sufficient to enable him to purchase the remaining shares in the company.  The Circuit Court (Tenney, J.) denied the motion for contempt.  It did not address whether these irregular payments were income for child support purposes.  The circuit court instructed the parties to prepare an interlocutory appeal statement.  The parties each submitted to the circuit court similar proposed interlocutory appeal statements, the circuit court signed the wife's proposed statement, and the wife submitted it to this court.

[¶6] The questions presented in this interlocutory appeal are:

Question One:     Are cash distributions received by a corporate shareholder that are necessary to pay [that] shareholder's personal tax liability as a result of corporate earnings monies available to the shareholder for support purposes?

Question Two:     Are distributions made under a corporate instrument requiring [succession] insurance payments monies available to a shareholder for support purposes?[1]

We answer both questions in the affirmative.

[¶7] Resolving the questions presented requires us to engage in statutory interpretation.  The interpretation of a statute presents a question of law, which we review de novo.  State v. Parr, 175 N.H. 52, 55 (2022).  We examine the statute's language, ascribing to its words their plain and ordinary meanings, and interpret it in the context of the overall legislative scheme and not in isolation.  In the Matter of Jerome & Jerome, 150 N.H. 626, 628-29 (2004).

[¶8] We first address the question of whether the two types of distributions the husband received are gross income "available" to the husband for child support purposes.  See RSA 458-C:2, IV(c).  Neither party argued that the distributions intended to be used to pay the husband's tax liability constitute dividends.  Nonetheless, we conclude as a matter of law based upon the record before us that those payments are dividends — an enumerated source of gross income under RSA 458-C:2, IV.  We additionally determine that

---

[1] While the interlocutory appeal statement characterizes the insurance policy as "key man" life insurance, at oral argument the parties agreed that it is better characterized as succession insurance.  Accordingly, for accuracy and consistency, we have replaced the reference to key man life insurance in the interlocutory questions presented.

the distributions the husband received to cover the cost of the succession insurance premiums were bonuses, another enumerated source of gross income under RSA 458-C:2, IV.

[¶9] The child support statute defines "gross income," in relevant part, as "all income from any source, whether earned or unearned, including but not limited to wages," self-employment income, dividends, and bonuses, but does not define each type of enumerated income source. See RSA 458-C:2, IV (2018). When a term is not defined in the statute, we look to its common usage, using the dictionary for guidance. Appeal of Town of Lincoln, 172 N.H. 244, 248 (2019). Black's Law Dictionary defines "dividend" as a "portion of a company's earnings or profits distributed pro rata to its shareholders," usually "in the form of cash or additional shares." Black's Law Dictionary 601 (11th ed. 2019). Here, the record shows that when NEI transitioned to an S corporation in 2018, it "changed its shareholder payout procedure [for available and excess profits] from a bonus scheme to that of paying dividends" to pay the shareholders' tax liability. The payments the husband received were distributed to him and his brother — the other 50% shareholder — in proportion to their ownership interests in the company. Therefore, under the plain meaning of the child support statute, we conclude that these distributions are dividends — an enumerated source of income under RSA 458-C:2, IV. As to the payments the husband received to cover the cost of the succession insurance premiums, NEI characterized those payments as a "[b]onus" on the husband's paystubs. Bonuses are an enumerated source of gross income. See RSA 458-C:2, IV.

[¶10] To be deemed "gross income," however, even specifically enumerated sources of income must be available to the obligor parent for payment of child support. See In the Matter of Doherty & Doherty, 168 N.H. 694, 700 (2016). When determining whether funds are available for child support purposes, the critical inquiry is whether the obligor actually received the funds. Compare Jerome, 150 N.H. at 629 (concluding that annuity payment wife received was "gross income" despite being intended to make wife whole for personal injuries), with Albert, 155 N.H. at 262-65 (concluding that obligor parent's cash draw from LLC was available for child support purposes, whereas income that LLC paid directly to mortgage lender, and obligor parent never received, was not available), and In the Matter of Giacomini & Giacomini, 150 N.H. 498, 501 (2004) (concluding payments made by the obligor parent's employer to cover his state and federal taxes were not available for child support where obligor parent never had constructive receipt of the funds). Here, because the husband received the funds, they were available for child support. Although the husband argues that spending these funds for another purpose would violate his contractual and corporate obligations, this argument fails to account for the fact that the husband — not the corporation — is liable for the succession insurance policy premiums and the shareholder income tax.

4

Notably, once the husband received the funds, he could use them as he pleased, and these personal obligations could be satisfied using other funds.

[¶11] Having determined that the distributions at issue in this case are "available" for child support purposes, our analysis of the two questions presented is complete. However, in the interlocutory appeal statement, the trial court also raised a question as to the meaning of "net income" for child support purposes including the phrase "which an employer withholds" in RSA 458-C:2, VI. Because this issue is likely to arise on remand, and since the parties have briefed it, we will address it. "Net income" is defined as:

> [T]he parents' combined adjusted gross income less standard deductions published on an annual basis by the department of health and human services and based on federal Internal Revenue Service withholding table amounts for federal income tax, F.I.C.A, and Medicare, which an employer withholds from the monthly income of a single person who has claimed a withholding allowance for 2 people.

RSA 458-C:2, VI (emphasis added). "Adjusted gross income" is defined as "gross income" less certain, actually paid, specified expenses, which neither party claims are at issue in this case. See RSA 458-C:2, I (2018).

[¶12] We read the definition of "net income" as "adjusted gross income" less the applicable amount for that year published in the New Hampshire Department of Health and Human Services (NHDHHS) Bureau of Child Support Services Child Support Guidelines, which is calculated "using the withholding table . . . published in . . . Department of Treasury Internal Revenue Service (IRS) Publication 15-T." State of New Hampshire Department of Health and Human Services Bureau of Child Support Services, Child Support Guidelines, glossary at 4 (2024), https://www.dhhs.nh.gov/sites/g/files/ehbemt476/files/documents2/css-guidelines-book.pdf (last visited August 12, 2024). We read the phrase "which an employer withholds" as part of the description of the IRS table amounts that NHDHHS uses to calculate its standard deductions. Therefore, the calculation of "net income" for child support purposes does not turn on the particular employer's withholding of taxes, F.I.C.A., and Medicare, or on the amount of those withholdings. Rather, the standard deduction published by NHDHHS will apply to adjusted gross income to calculate net income regardless of actual employer withholding.

5

[¶13] In sum, we answer both of the interlocutory appeal questions in the affirmative: the distributions intended to pay the husband's succession insurance and shareholder income tax obligations are both "available" for child support purposes. We remand for further proceedings consistent with this opinion.

*Remanded.*

DONOVAN and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.